# Richmond.

## J. Kent Dickinson v. Board of Supervisors of Albemarle County.

### November 18, 1926.

1. Municipal Securities—*Road Bonds—Exemption of Inhabitants of an Incorporated Town from Taxation Providing for Interest and Sinking Fund for Road Bonds—Town of Scottsville—Case at Bar.*—Property in the town of Scottsville is not exempt from levy for taxes to provide for road bonds issued under Acts of 1919, page 43, Acts of 1920, page 644, and Acts of 1922, chapter 129, page 211, notwithstanding the exemption in its charter and section 1987 of the Code of 1919.

2. Municipal Securities—*Road Bonds—Exemption of Inhabitants of an Incorporated Town from Taxation Providing for Interest and Sinking Fund for Road Bonds—Town of Scottsville—Acts of 1922, Page 905 and Acts of 1922, Page 888.*—The proviso attached to the amendatory act of March 28, 1922 (Acts of 1922, p. 888), to the effect that the amendments should not apply to pending bond issues, applies to the subsequent amendatory act of March 29, 1922 (Acts of 1922, p. 905), and a $205,000.00 bond issue validated by chapter 129 of the Acts of 1922, is subject to the Acts of 1919, page 43 and Acts of 1922, page 888, notwithstanding section 7 of the amendatory act of 1922, page 905.

3. Municipal Securities—*Road Bonds—Exemption of Inhabitants of an Incorporated Town from Providing for Interest and Sinking Fund for Road Bonds—Town of Scottsville.*—Acts of 1919, page 43, providing for issuance of county bonds for permanent road improvements is absolutely inconsistent with the provision of the charter of the town of Scottsville exempting the town from road taxes, so far as it relates to bonds issued under the act of 1919, and thus far the charter provision is repealed by that act, and the amendment of 1922 (Acts of 1922, pp. 888, 905) does not affect this issue.

4. Municipal Securities—*Road Bonds—Exemption of Inhabitants of an Incorporated Town from Taxation Providing for Interest and Sinking Fund for Road Bonds.*—Acts of 1919, page 43, providing for the issuance of road bonds for permanent road improvements provides that the qualified voters of all towns shall vote at the election; provides for the taxing of property in all incorporated towns within the district for which the bonds are issued; provides that all prop-

erty liable to county or district tax shall be subject to levy for
interest and sinking funds; provides for polls at the voting places
in the incorporated towns and repeals all acts or parts of acts in
conflict with it.

*Held:* That the act is clearly inconsistent with the ordinary exemption
of towns in Virginia from the payment of road taxes when it appears
that the towns keep their streets in order.

5. MUNICIPAL SECURITIES—*Road Bonds—Exemption of Inhabitants of an
Incorporated Town from Taxation Providing for Interest and Sinking
Fund for Road Bonds.*—It is hardly consistent with reason or fairness
that voters in an incorporated town could saddle a bonded indebted-
ness upon the surrounding community for permanent improvement
of roads, and then be exempt from the payment of taxes to pay
interest on, and to provide a sinking fund for, the retirement of such
indebtedness.

6. MUNICIPAL SECURITIES—*Road Bonds—Exemption of Inhabitants of an
Incorporated Town from Taxation Providing for Interest and Sinking
Fund for Road Bonds—Section 1987 of the Code of 1919.*—Section 1987
of the Code of 1919, which exempts the property in all incorporated
towns which maintain their own streets from the regular levy for
the district road taxes, has no application to a tax to provide for
interest and sinking funds on bonds issued under Acts 1919, page
43, for permanent road improvements, not only because the 1919
act expressly provides for a tax on all property liable for county
or district taxes, including town property, which makes the two
acts inconsistent, but section 1987 applies only to the regular district
road levies for the maintenance of district roads and not to levies
for interest and sinking fund on bonds issued for permanent road
improvements under the act of 1919.

7. MUNICIPAL SECURITIES—*Road Bonds—Exemption of Inhabitants of an
Incorporated Town from Taxation Providing for Interest and Sinking
Fund for Road Bonds.*—Acts of 1919, page 43, providing for the
issuance of county bonds for permanent road improvements, relates
to the issuance of district road bonds for permanent road improve-
ment, a comparatively new subject of legislation in Virginia; it
was intended to embrace for the purpose of taxation all property
subject to county or district tax in every county or magisterial
district in the State which availed itself of the provisions of the
act. It was passed with full knowledge on the part of the legislature
of the almost universal provisions in town charters exempting towns
from road taxes where they maintain their own streets. It is in-
conceivable that the legislature did not intend that this taxation
for permanent road improvements should be separate from taxation
for maintenance and improvement of roads; and that urban com-
munities should not bear their proportion of the expense.

8. MUNICIPAL SECURITIES—*Road Bonds—Exemption of Inhabitants of an*

*Incorporated Town from Taxation Providing for Interest and Sinking Fund for Road Bonds—Acts of 1922, Pages 888 and 905.*—Section 12 of the act of March 28, 1922 (Acts of 1922, p. 888), provided that the acts should not affect the existing law, where, in any proposed bond issue for county or magisterial districts, application has been made for an election thereon as provided for in the existing law. It was contended that this proviso did not have the effect of leaving the bond issue in the instant case subject to the law in existence, that is the act of 1919, page 43, although application for the election was made under the 1919 act, because on March 29, 1922, one day after the passage of the March 28, 1922, act, containing the proviso, the legislature reenacted section 7 (Acts of 1922, p. 905) of the act of 1919 (as appears from the title) and exempted incorporated town property from levy for district road bond purposes.

*Held:* That this contention was without merit.

9. Municipal Securities —*Road Bonds—Exemption of Inhabitants of· an Incorporated Town from Taxation Providing for Interest and Sinking Fund·for Road Bonds—Acts of 1922, Pages 888 and 905.*—As the act of 1919, page 43, was reenacted in its entirety by the act of March 28, 1922 (Acts of 1922, p. 888), and this act, with the proviso, was made an emergency act and was in force from its passage—section 7 of the act of 1919 had been superseded by section 7 of the act of March 28, 1922, with its repealing clause (section 12), when the act of March 29, 1922 (Acts of 1922, p. 905), was passed, and the amendment must have applied to section 7 of the 1922 act of March 28. The act of March 29 did· not purport to amend any part of either the act of 1919 or of March 28, 1922, except section 7, and section 12 was in full force and effect as if the act of March 29 had not been enacted. The meaning of section 12 (Acts of 1922, p. 888) is that that act shall not affect the existing law, where application has already been made for a bond election, and section 7, when amended on March 29 (Acts of 1922, p. 905), became a part of the act of March 28, 1922 (Acts of 1922, p. 888), just as fully as any other section of the act.

10. Statutes—*Amendment—Amendment Becomes Part of the Statute.*— Where a section of a statute is amended the original ceases to exist and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendment had always been there.

11. Municipal Securities—*Road Bonds—Exemption of Inhabitants of Incorporated Towns from Taxation Providing for Interest and Sinking Fund for Road Bonds—Chapter 445 of the Act of 1920—Concreie Road between Charlottesville and Scottsville.*—The special act (ch. 445 of Acts of 1920) under which $500,000.00 of bonds were issued to construct · a concrete road from Charlottesville to Scottsville was intended to and did provide for the levy of a tax on all personal

property and real estate in the town of Scottsville as well as in all other parts of what is known as Scottsville magisterial district, this special act clearly repeals, by necessary implication, the exemption claimed under the town charter (Acts of 1874) if they can be said to be in conflict.

12. Municipal Securities—*Road Bonds—Taxation for Interest and Sinking Fund—Two Bond Issues and one Levy—Case at Bar.*—In the instant case, an application for correction of an erroneous assessment for taxation, there had been two bond issues, one under act of 1919, page 43, the proceeds of which were used in permanently improving roads in the Scottsville district alone, and one under the special act of 1920, chapter 445, issued for the purpose of building a concrete road in two districts, Scottsville and Charlottesville. It was contended that the only way the board of supervisors could legally levy taxes to pay interest and create a sinking fund was to levy two taxes for this purpose—one under the act of 1919, a Scottsville district tax, and the other a joint (Scottsville and Charlottesville) district tax under the special act of 1920.

*Held:* That there was no legal objections to the method pursued by the board of making a single levy in the Scottsville district.

Error to a judgment of the Circuit Court of Albemarle county, in a proceeding for the correction of an erroneous assessment of taxes. Judgment for defendants. Applicants assign error.

*Affirmed.*

The opinion states the case.

*Allen, Walsh & Michie* and *Littleton Waddell*, for the plaintiff in error.

*Lemuel F. Smith* and *John S. Graves*, for the defendant in error.

Chichester, J., delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Albemarle county entered on the 3rd day of February, 1926, denying the relief prayed for by J. Kent Dickinson in an application for the correction of an alleged

erroneous assessment for taxation of his property in the town of Scottsville.

The error assigned is that the circuit court erred in its ruling on the question of law arising on the agreed statement of facts upon which the case was submitted to the court. As far as it is necessary to state them, the agreed facts are: That the applicant, J. Kent Dickinson, is and was on February 1, 1924, a resident of the town of Scottsville within the geographical limits of Scottsville magisterial district, and owns real and personal property located in the town, the personal property being assessed at $380.00 and the real estate at $1,100.00.

At the general election held November 8, 1921, the question of the issuance of $205,100.00 of bonds for macadamizing and permanently improving certain roads in Scottsville district, in Albemarle county, was submitted to the qualified voters of the district, including the qualified voters of the town of Scottsville, pursuant to chapter 28 of the Acts 1919. At the election the qualified voters of the town of Scottsville participated in the election.

The result of the election was favorable to the issuance of bonds and they were sold in denominations of $1,000.00 each, and were dated January 15, 1922, maturing January 15, 1947. Through some error in the petition for the election it became necessary to validate these bonds by act of the legislature. (Chap. 129, Acts 1922).

At the 1920 session of the legislature (Acts 1920, p. 644) an act was approved authorizing the board of supervisors of Albemarle county to issue bonds of the county without submission to the vote of the people, in the aggregate amount not exceeding $500,000.00, to be used in the permanent improvement and main--

tenance of the public roads in Scottsville magisterial district and Charlottesville magisterial district of Albemarle county, leading from Scottsville to Carter's Bridge and thence to Charlottesville (sections 3 and 4 of this act which are pertinent to this controversy appear in the margin.)*

Pursuant to the authority vested in it by this act the board of supervisors issued the total amount of bonds authorized, the various issues being made August 1, 1920, September 1, 1920, May 1, 1921, and November 1, 1921. With the proceeds, a concrete road was built from Charlottesville to Scottsville and about 300 lineal yards at a cost of $5,874.00 was built in the town of Scottsville. There was no request for, authorization of, or objection to the construction of a portion of the road in the town by the town council.

The town of Scottsville maintained its own streets before, and has done so since, the construction of a portion of the concrete road in the town, but the county of Albemarle on one occasion put tar between the joints on this road in the town.

The board of supervisors of Albemarle county levied a tax for the year 1924 at the rate of $1.60 for every $100.00 worth of tangible personal property and real

*3. The board of supervisors of Albemarle county, after said loan has been negotiated and said bonds issued, when the county levy is made or imposed in said county, shall levy a tax on all property now or hereafter liable to county levy in those parts of said county known as Scottsville magisterial district and Charlottesville magisterial district, sufficient to meet the interest on said bonds as it matures and to create a sinking fund to pay the principal thereof, the amount of said sinking fund to be fixed by said board, and to be invested by the treasurer of said county under the supervision and direction of said board of supervisors in such manner as said board may direct until the same shall be needed to pay the principal of said bonds and shall then be used for that purpose, and from year to year said levy or assessment shall be made as long as it may be necessary to meet said interest and to provide for the payment of the principal of said bonds and no tax shall be levied for the purpose of paying any bonds under this act, nor the interest thereon, in any other part of said county.

4. All acts and parts of acts inconsistent with this act are hereby repealed.

estate situated in Scottsville magisterial district, for interest and sinking fund for all district road bonds in that district, and the commissioner of the revenue of the county of Albemarle, Virginia, for District No. 1, during the year 1924, assessed this levy against the property of J. Kent Dickinson (and all other property owners) in the town of Scottsville.

The levy amounted to $6.08 on Dickinson's personal property and $17.60 on his real estate.

Dickinson did not pay the tax assessed against him and, as stated, applied to the Circuit Court of Albemarle county for correction of the assessment. The circuit court refused the relief asked for, hence this appeal.

There are two main grounds upon which the applicant rests his contention that the assessment complained of is erroneous. The first ground applies to both bond issues. The second ground applies to the first issue only.

[1] 1. That property in the town of Scottsville is exempt from levy for taxes for district road purposes, being expressly exempted by section 6 of its charter (Laws 1874, c. 331, printed in the margin†) and by section 1987 of the Code of 1919 (copied in the margin as far as pertinent‡).

---

†"Section 6. And be it further enacted, That the said corporation of Scottsville shall be entitled to all privileges, benefits, powers and immunities granted by the several acts of the General Assembly of Virginia for the government of towns of less than five thousand inhabitants; and that the citizens of said town shall be exempt from working on any road, and from the payment of any road tax for any year in which it shall appear that the said town shall at its own expense keep its streets in order; and the council of the said town shall have the power to cause all of its male citizens to work on the streets, roads and alleys within the corporate limits, for the same number of days and subject to the same conditions as are now provided for working roads in the general laws of the State."

‡The board of supervisors of each county shall annually levy, along with the county levy, a road tax upon the property, real and personal, assessed for taxation in the several magisterial districts of their county, and not embraced within the corporate limits of any incorporated town in such county which maintains its own streets, which shall be applied to the working, keeping in order, and repairing the public roads in such district, and in defraying the district's proportion of expense of construction of any public road therein for which State aid is obtained, as may be provided for by law.

Opinion.

[2] 2. That the proviso attached to the amendatory act of March 28, 1922 (Laws 1922, c. 513), to the effect that the amendments should not apply to pending bond issues, does not apply to the subsequent amendatory act of March 29, 1922 (Laws 1922, c. 519), and that the $205,000.00 bond issue here being considered is subject to the provisions of the act as amended March 29, 1922, and especially section 7 thereof, and not to the 1919 act, or the March 28, 1922, act, with the proviso. Section 7 of the act of 1919, upon which the county relies to sustain the levy, appears in the margin§. Section 7 of the amendatory act of March 28, 1922, also appears in the margin¶,

§After issuing such bonds, or any of them, when the next levy is laid or tax imposed in said county, a tax shall be levied on all property liable to county or district tax in such magisterial district in which the proceeds of the bonds have been or are to be expended, including such property located, or the situs of which for taxation is, within the limits of any incorporated town situated within such district, to pay the interest of the bonds so issued, and to create a sinking fund to redeem the principal thereof at maturity; and, in addition, an annual levy at a rate to yield a sum equal to, but not less than, three per centum of the amount of bonds issued in any year, or, in lieu thereof, an amount equal to the amount raised from said additional levy may be set aside by the board of supervisors from other funds of the county, or may be raised by other means now provided for by law, which sum shall be expended under the direction of the local road authorities in the maintenance and upkeep of the roads constructed and improved hereunder, and from year to year said levy or assessment shall be made until the debt and interest are paid, which levy shall exceed ninety cents on the one hundred dollars ($100.00) of taxable property within the said magisterial district of said county; the amount levied for and set apart as a sinking fund and the interest accruing thereon shall be used for the payment of the principal of said bonds, and for no other purpose.

¶7. After the order of the board of supervisors has been made under section four hereof, when the next levy is laid or tax imposed in said county, a special tax shall be levied on all property liable to county or district road tax in such magisterial district in which the proceeds of the bonds have been or are to be expended, including such property located, or the situs of which for taxation is, within the limits of any incorporated town situated within such district, sufficient to pay the interest on the bonds so issued, or to be issued, and to create a sinking fund to redeem the principal thereof at maturity; and, in addition, an annual levy at a rate to yield a sum not less than three per centum of the amount of bonds issued, or in lieu thereof, an amount equal to the amount raised from said additional levy may be set aside by the board of supervisors from other funds of the county, or may be raised by other means now provided for by law, which sum shall be expended under the direction of the local road authorities in the maintenance and upkeep of the roads constructed and improved here-

and section 7 as amended by the act of March 29, 1922, appears in the margin.‖

(1) It will be observed from the agreed statement of facts that there were two district road bond issues, one for $205,000.00 issued under authority of chapter 28, Acts 1919, page 43, for permanent improvement of public roads in Scottsville district, and that the question of the issuance of these bonds was voted on by the people; and the other for $500,000.00 was issued by the board of supervisors without vote of the people, under the provisions of the special act of March 24, 1920 (Acts 1920 p. 644), for the express purpose of constructing a concrete road from Charlottesville to Scottsville. This latter was a joint district road bond issue for Charlottesville and Scottsville districts. The pertinent parts of the act appear in the margin. It will also be observed that but one levy was made, $1.60 for every one hundred dollars

---

under, and from year to year said levy or assessment shall be made until the debt and interest are paid, provided, however, that the interest and sinking fund tax provided for herein shall not be construed in the meaning of this act to be a county road tax, and provided further that no tax upon intangible personal property for road construction and for maintenance shall exceed thirty cents on the one hundred dollars of valuation.

‖. After issuing such bonds, or any of them, when the next levy is laid or tax imposed in said county, a tax shall be levied on all property liable to county and district tax in such magisterial district in which the proceeds of the bonds have been, or are to be expended, including the property, if any, located, or the situs of which for taxation is, within the limits of any incorporated town situated within such district, wherein real estate is subject to county and district road tax, to pay the interest on the bonds so issued, and to create a sinking fund to redeem the principal thereof at maturity; and, in addition, an annual levy at a rate to yield a sum amounting to not less than three per centum of the amount of bonds outstanding and/or previously issued, or, in lieu thereof, an amount equal to the amount to be raised from said additional levy may be set aside by the board of supervisors from other funds of the county, or may be raised by other means now provided for by law; which sum shall be expended under the direction of the local road authorities in the maintenance and upkeep of the roads constructed and improved hereunder, and from year to year said levy and assessment shall be made until the debt and interest are paid, but said additional levy for maintenance shall not exceed ninety cents on the one hundred dollars ($100.00) of taxable property within the said magisterial district of said county, and the amount levied for and set apart as a sinking fund and the interest accruing thereon shall be used for the payment of the principal of said bonds, and for no other purpose.

of property real and personal in Scottsville magisterial district, for interest and sinking fund for the two issues of district road bonds to take care of the district of Scottsville's obligations under the two issues. Of course there was an assessment in Charlottesville magisterial district to take care of the Charlottesville district's obligation under the $500,000.00 bond issue— but we are not concerned with that. This single levy of $1.60 for the purpose mentioned raises an additional question which will be considered later.

As to the present inquiry the bond issues (in all $705,000.00) having been made under two acts it will be necessary to determine whether in either or both cases the levy could be legally made upon property in the town of Scottsville.

[3] Taking up the issue ($205,000.00) under the act of 1919, it is the contention that the levy was properly made because: Section 6 of the charter of Scottsville only exempts town property from taxation for *maintenance* of district roads and from levy of a tax for this purpose for any year in which it shall appear that it has at its own expense maintained and kept in order its streets, whereas the levy in question was made under chapter 28, Acts 1919, and the tax collected is not for maintenance of roads or streets but for the payment of interest on bonds and to create a sinking fund to pay the bonds issued for *construction* of *permanent* roads which were not contemplated at the time of the granting of the charter. It is further contended, if this is not so, then the act of 1919 is absolutely inconsistent with the provision of the charter relied on and this provision is repealed by the later act. It is also contended that the amendments of 1922 do not affect the issue.

As we view it, if the charter of the town of Scotts-

ville of 1874 and the act of 1919 can be said to relate to the same matter the later act so clearly repeals the sixth clause of the charter, so far as the subject matter of this controversy is concerned, that it is not necessary to discuss at length whether they relate to the levy of taxes for the same purpose. If they do, as urged by the petitioner, the latter act is controlling.

[4, 5] The provision of the charter relied on by the appellant provides that "the citizens of said town shall be exempt from working on any road and from payment of any road tax for any year in which it shall appear that the said town shall, at its own expense, keep its streets in order." A similar provision appears in almost all, if not all, of the town charters in Virginia, and yet the act of 1919 not only provides that the qualified voters of all the towns of the State shall vote at an election for the issuance of district road bonds, but it also expressly provides for the taxing of property in all incorporated towns within districts for which bonds are issued under that act— "After issuing such bonds * * * * a tax shall be levied on all property liable to *county or district* tax in such magisterial district in which the proceeds of the bonds have been or are to be expended, including the property located, or the situs of which for taxation is, within the limits of any incorporated town situated within such district, to pay the interest on the bonds so issued and to create a sinking fund to redeem the principal thereof at maturity." Section 7. And the act concludes: "All acts or parts of acts in so far as they are in conflict herewith are hereby repealed." In addition to the express provisions of the 1919 act above pointed out as inconsistent with that part of the charter relied on it will be noted that *all* property subject or liable to *county* or *district tax* in such magis-

terial district is subject to levy for interest on the district road bonds and to create a sinking fund. The property in the town of Scottsville is undoubtedly subject to such a tax and this provision of the act, coupled with the repealing clause, is sufficient of itself to nullify the provision of the charter so far as the levy in this case is concerned. But in addition to this an almost complete answer to the contention of the petitioner that a repeal of the charter provision relied on was not intended, is the provision of clause 2 of the 1919 act that the election officers of the county shall open the polls in the district or districts where the vote is to be taken, "including the polls at the voting places in the incorporated towns located in such district or districts," and the fact that the qualified voters in the town of Scottsville actually voted in the election which authorized the issuance of the $205,000.-00 of bonds. It is hardly consistent with reason or fairness that voters in an incorporated town could saddle a bonded indebtedness upon the surrounding community for a permanent improvement of roads, and then be exempt from the payment of taxes to pay interest on, and to provide a sinking fund for, the retirement of such indebtedness.

[6] So far as section 1987 of the Code of 1919 which exempts the property in all incorporated towns which maintain their own streets from the regular levy for the district road taxes, it has no application to the tax here being considered (not only because the 1919 act expressly provides for a tax on *all* property liable for county or district taxes, including town property, which makes the two acts inconsistent, but section 1987 applies only to the regular district road levies for the maintenance of district roads and not to levies for interest and sinking fund on bonds issued for permanent road improvement under the act of 1919.

[7] And in addition and supplemental to what we have said we think the 1919 act related to the issuance of district road bonds for *permanent* road improvement, a comparatively new subject of legislation in Virginia; that it was intended to embrace for the purpose of taxation all property subject to county or district tax in every county or magisterial district in the State which availed itself of the provisions of the act.   The act of 1919 was passed with full knowledge on the part of the legislature of the almost universal provisions in town charters similar to section 6 of the town charter of Scottsville, and of section 1987 of the Code.   It is inconceivable, under such circumstances, that it did not intend that taxation for this new purpose, *permanent* road improvement, should be separate and distinct from maintenance and improvement of roads in the old way, and that urban communities, so peculiarly benefited by permanent good roads, should bear their proportion of such improvement.

[8, 9] The contention that the proviso (section 12) of the act of 1922 is to be construed as not applying to the subsequent act of March 29, 1922, which contains no such proviso, has no merit.   The proviso of section 12 of the act of March 28, 1922, is as follows: "All acts and parts of acts, in so far as the same are in conflict herewith, are hereby repealed; provided, that this act shall not affect the existing law where, in any proposed bond issue for county or magisterial district, application has been made for an election thereon as provided for in the existing law."

It is contended that this proviso does not have the effect of leaving the bond issue here being considered subject to the law in existence (that is the act of 1919), although application for the election was made

under the 1919 act, because on March 29, 1922, one
day after the passage of the March 28, 1922, act,
*containing* the proviso, the legislature reenacted sec-
tion 7 (Acts 1922, p. 905) of the act of 1919 (as
appears from the title) and exempted incorporated
town property from levy for district road bond pur-
poses. But as the act of 1919 was reenacted in its
entirety by the act of March 28, 1922 (Acts of 1922
p. 858) and this act, with the proviso, was made an
emergency act and was in force from its passage, section
7 of the Act of 1919 had been superseded by section 7
of the act of March 28, 1922, with its repealing clause
(section 12), when the act of March 29, 1922 (Acts
of 1922 p. 915), was passed, and the amendment must
have applied to section 7 of the 1922 act of March 28.
The act of March 29 did not purport to amend any
part of either the act of 1919 or of March 28, 1922,
except section 7, and section 12 was in as full force
and effect as if the. act of March 29 had not been
enacted.

The meaning of section 12 (Acts of 1922, p. 888) is
that this act shall not affect the existing law, where
application has already been made for a bond election,
and section 7 when amended on March 29, (Acts of
1922, p. 915) according to our construction of the act,
became a part of the act of March 28, 1922 (Acts of
1922, p. 915), just as fully as any other section of the
act. "Where a section of a statute is amended the
original ceases to exist and the section as amended
supersedes it and becomes a part of the statute for all
intents and purposes as if the amendments had always
been there." 25 R. C. L. p. 907. The act of 1919, there-
fore, is controlling.

[11] (2) It is quite apparent from what has been
heretofore said that we are of opinion that the special

act (chapter 445, Acts 1920) under which $500,000.00 of bonds were issued to construct a concrete road from Charlottesville to Scottsville was intended to and did provide for the levy of a tax on all personal property and real estate in the town of Scottsville as well as in all other parts of what is known as Scottsville magisterial district, for the act (section 3) says: "The board of supervisors of Albemarle county, after said loan ·has been negotiated and said bonds issued, when the county levy is made or imposed in said county, *shall levy a tax on all property now or hereafter liable to county levy in those parts of said county known as Scottsville magisterial district * * * * sufficient* to meet the interest on said bonds as it matures and to create a sinking fund to pay the principal thereof." (Italics supplied.)

The plain language of the statute is that the levy shall be on *all* property subject to county levy. The property in the town of Scottsville is subject to *county levy*, it is a part of Scottsville magisterial district and it is not excepted, and the act contains the repealing clause—"all acts or parts of acts inconsistent with this act are hereby repealed." Here is a special act which clearly repeals, by necessary implication, the exemption claimed under the town charter (Acts 1874) if they can be said to be in conflict. However, all that has been said heretofore with reference to these acts for *permanent* road improvement being distinct legislation providing for taxation independently of all other acts with reference to maintenance of roads and the like, reaching out for subject matters of taxation of their own, is applicable here, and will not be repeated.

But in addition to this, the special act of 1920 authorized the issuance of bonds, without an election, for

the building of a particular road, of a certain construction, one terminus of which was to be in the city of Charlottesville, and the other in the town of Scottsville. This act was wholly independent of any other district or county road bond issue act. It was intended to benefit the rural community lying between the two towns of course and it was provided that the rural districts should be taxed accordingly, but the construction of the road was of peculiar benefit to the towns it connected, and the legislature intended the town of Scottsville should be taxed for the construction of such a highway—that is to help pay interest on the bonds and to provide a sinking fund for their final retirement. Viewed in the light of the purpose of the act this language used by the legislature leaves no room for argument: "The board of supervisors of Albemarle county, after the said loan has been negotiated and the said bonds issued, when the county levy is made or imposed in said county, shall levy a tax on all property now or hereafter *liable* to *county levy* in those parts of said county known as Scottsville magisterial district and Charlottesville magisterial district sufficient to meet the interest * * * and to create a sinking fund."

[12] This brings us to a consideration of the final question as to the legality of the levy of the tax complained of by the petitioner. The purport of the contention (conceding the acts to be operative in the town of Scottsville as well as in the remainder of the district) is, that as there were two bond issues, one under the 1919 act, the proceeds of which were used in permanently improving roads in Scottsville district alone, and one under the special act of 1920, issued for the specific purpose of building a concrete road in two districts, Scottsville and Charlottesville, that the only

way the board of supervisors could legally levy taxes. to pay interest and create a sinking fund to retire the bonds thus issued, was to levy two taxes for these purposes—one under the act of 1919, a Scottsville district tax, and the other a joint (Scottsville and Charlottesville) district tax, under the special act of 1920. That is, that the board was authorized to levy a tax under each act, for the purposes therein stated, and having only levied in Scottsville district one tax of $1.60 on every $100.00 worth of property, this levy can only be considered to apply to the 1919 act, and there has been no legal levy under the 1920 act because the board had no power to levy a separate tax on each district under this latter act. It is then concluded that even though the board of supervisors intended that the levy should be partly for the purposes of one issue and partly for the other, the levy under the 1922 statute being invalid, the whole levy would be invalid because it is impossible to say which was valid and which invalid.

It would undoubtedly have been more in keeping with sound business and the letter of the acts to have made separate levies, one under the 1919 act and one under the 1920 act, and it would have been possible to have made one levy under the 1920 act to apply to both districts, but we can see no legal objection to the method pursued by the board since no complaint. is made that there is any inequality of assessment as between citizens of the two districts, or because of a single levy in the district. The method followed by the board in making only one levy in Scottsville district requires more bookkeeping, but if the board cares to assume this extra burden and pursues it without injustice to individual taxpayers in that district, there is no valid legal objection to it. Certainly the

agreed statement of facts does not suggest such an objection. So far as the two districts are interested and concerned, one levy for the two districts would be inequitable in that it would ignore the difference in mileage and the cost of construction in the different districts. The assumption is that the road tax in Charlottesville district for the concrete road constructed under the 1920 act was assessed with the end in view of adjusting the payment of interest and the creation of the sinking fund equitably between the taxpayers of the two districts.

The agreed statement of facts does not give sufficient information for us to determine whether or not the county authorities arrived at exactly the correct rate when they laid the levy at $1.60, and for this reason it will be assumed, even if the question were involved here, that it is correct.

We are of opinion that the levy is not invalid upon the grounds we are now considering, and since, as heretofore stated, the act of 1919 and the special act of 1920 contemplated the taxing of all taxable property, in incorporated towns, for the purposes set out in the acts, and because, as stated, the acts of March 28 and March 29, 1922, have no bearing upon the issues here because they left the $205,000.00 bond issue to be governed by the act of 1919, we see no error in the order of the trial court, and we are of opinion to affirm it.

*Affirmed.*