# Staunton

## Robert L. Mandell, Et Al. v. T. Gray Haddon, Etc., Et Al.

September 8, 1961.

Record No. 5220.

Present, All the Justices.

The opinion states the case.

*Henry T. Wickham* (*David J. Mays; Tucker, Mays, Moore & Reed,* on brief), for the appellants.

*Lewis F. Powell, Jr.* and *Joseph C. Carter, Jr.* (*A. S. Harrison, Jr., Attorney General; Francis C. Lee, Assistant Attorney General; Waller H. Horsley; Hunton, Williams, Gay, Powell & Gibson,* on brief), for the appellees.

I'Anson, J., delivered the opinion of the court.

The appellants, Robert L. Mandell, Myron A. Fine, Gerald H. Fine, C. T. Covington, Jr., and W. V. Harvey, merchants operating retail grocery stores in the city of Richmond, filed this declaratory judgment suit against T. Gray Haddon, Commonwealth's attorney of the city of Richmond, one of the appellees herein, to enjoin him from enforcing chapter 267 of the Acts of Assembly of 1960 (herein referred to as the amended Sunday law, or as §§ 18.1-358, 18.1-358.1 and 18.1-358.2 of the Code of 1950, as amended) and prayed that a

decree be entered holding the chapter to be void and of no effect because it was expressly repealed by the subsequent enactment of chapter 358, Acts of Assembly, 1960 (herein referred to as the recodification act) or that chapter 267 be declared unconstitutional and void in that it violates Articles I and IV of the Constitution of Virginia and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The Virginia Retail Merchants Association and the Richmond Retail Merchants Association intervened as parties defendant.

After an *ore tenus* hearing and the consideration of evidence presented in the form of depositions and stipulations of fact, the court below, in a written opinion, held chapter 267 to be in full force and effect and constitutional, except that that part of the amended Sunday law which excludes from the specific prohibition of sales of sporting goods, "sales or rental on the premises where sports, athletic events or recreational facilities are located or conducted of equipment essential to the normal use or operation of such premises for the purposes specified" was held to be unreasonably discriminatory and a denial of equal protection of the law to vendors not meeting such conditions. We granted the appellants an appeal and the appellees have assigned cross-error to that part of the decree holding that the "exclusion" relating to the sale of sporting goods as provided under the act is unconstitutional.

Thus, the questions presented by the appellants' assignments of error and the appellees' one assignment of cross-error are as follows:

(1) Was chapter 267 (the amended Sunday law) which became effective June 27, 1960, repealed by chapter 358 (the recodification act) which became effective July 1, 1960?

(2) Does chapter 267 impair the religious freedom guaranteed by Article I, § 16, and Article IV, § 58, of the Constitution of Virginia?

(3) Does chapter 267 violate Article IV, § 63, clause 18, of the Constitution of Virginia and the Fourteenth Amendment to the Constitution of the United States?

(4) Is the "exclusion" in the amended Sunday law, relating to the sale of sporting goods on the premises where sports, athletic events, or recreational activities are conducted, so discriminatory and arbitrary as to violate the requirement of equal protection of the laws?

(5) May the remainder of the amended Sunday law be upheld even though a portion thereof be invalid?

At the commencement of the 1960 session of the General Assembly the statute governing the subject of laboring on Sunday was

Code § 18-329[1], as amended, the pertinent part of which is set out in the footnote below, and will sometimes hereinafter be referred to as the old Sunday law.

The record shows that prior to the convening of the 1960 session of the General Assembly a proposed amended Sunday law was prepared by the legislative committee of the Virginia Retail Merchants Association, after considerable research and study of the Sunday laws of other states, and circulated among retailers, law enforcement officers and interested parties throughout the State, and widespread public interest was created in the proposal. Copies of the proposed new law were also sent to members of the General Assembly.

On January 29, 1960, the proposed Sunday law bill, amending and reenacting Code § 18-329 and adding §§ 18-329.1 and 18-329.2, providing penalties for violations, was introduced in the House of Delegates, and its counterpart was introduced in the Senate on February 4, 1960. The bills were referred to both House and Senate committees. Public hearings were held, at which time it was pointed out that § 18-329 was being extensively violated and it had become practically unenforceable because its language was too general and the meaning of the exception prescribed for "works of necessity or charity" contained therein was uncertain and confusing to law enforcement officers, juries and the general public. The bill was passed on February 8th by the House with a vote of 88 in favor and none against. The Senate bill, with amendments, was passed by the Senate on March 3, 1960, by a recorded vote of 38 to 0. The House concurred in the amended Senate bill and passed it on March 7, 1960, by a recorded vote of 81 to 0. The bill was approved by the Governor on March 12, 1960, and became effective June 27, 1960. Thus the amended Sunday law was adopted as chapter 267[2] of the Acts of Assembly of 1960, the pertinent part of which is set out in the footnote below.

---

[1] "If a person on a Sunday be found laboring at any trade or calling, or employ his apprentices or servants in labor or other business, except in household or other work of necessity or charity, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars for each offense. * * * This section shall not apply to furnaces, kilns, plants and other business of like kind that may be necessary to be conducted on Sunday, nor to the sale of gasoline, or any motor vehicle fuel, or any motor oil or oils, nor to the operation of motion picture theatres." (Code of 1887, § 3799; Acts 1908, p. 258; Acts 1916, p. 751; Acts 1932, p. 596; Acts 1954, ch. 131, pp. 127, 128.)

[2] "§ 18-329. *Working or transacting business on Sunday.—On the first day of the week, commonly known and designated as Sunday, it shall be unlawful for any person to engage in work, labor or business or to employ others to engage in work,

Pursuant to a plan specified in Title 9, chapter 8, of the 1950 Code, as amended, §§ 9-66 to 9-77.2, inclusive, providing for the gradual revision of the Code, and specifically in accordance with a directive set out in Code § 9-77.2, the Virginia Code Commission submitted to the 1960 session of the General Assembly a proposed bill for the revision of Title 18 of the Code, §§ 18-1 to 18-366, inclusive, which title related to crimes and offenses generally, and of course included § 18-329, the old Sunday law. The bill provided in its title and preamble for the repeal of Title 18 and the reassembling of the contents thereof under a new title designated as Title 18.1, with § 18-329 being retained as §§ 18.1-358 to 18.1-363, inclusive. It was introduced in the Senate on January 13, 1960, which was the first day of the 1960 session, and passed that body on January 29, 1960, by a recorded vote of 35 to 0. It passed the House on March 9, 1960, by a recorded vote of 82 to 0. The act was approved March 30, 1960, as chapter 358 of the Acts of Assembly, and by its terms became effective July 1, 1960.

Most, if not all, of the 41 patrons of the amended Sunday law in

*labor or business except in household or other work of necessity or charity. The exemption for works of necessity or charity contained in the preceding sentence shall not be deemed to include selling at retail or wholesale or by auction, or offering or attempting to sell, on Sunday, any of the following: jewelry; precious and semi-precious stones; silverware; watches; clocks; luggage; musical instruments; recordings; toys (excluding items customarily sold as novelties and souvenirs); clothing and wearing apparel; clothing accessories; footwear; textile yard goods; housewares; china; kitchenware; home, business, office or outdoor furniture, furnishings and appliances; sporting goods (excluding sales or rental of bathing, boating and fishing paraphernalia and equipment, and sales or rental on the premises where sports, athletic events or recreational facilities are located or conducted of equipment essential to the normal use or operation of such premises for the purposes specified); pets, pet equipment or supplies; cameras and photographic supplies (excluding film and flash bulbs); hardware; tools; paints; building and lumber supplies and materials; motor vehicles; trailers (excluding mobile homes); farm implements; lawn and garden equipment and supplies; farm produce (excluding sales of farm produce grown by the seller and sold at roadside stands or at the place where grown) or fresh, frozen or salt meats, poultry or seafood customarily inedible without further cooking or preparation (excluding smoked or cured hams). No inference shall arise from the foregoing enumeration of classes of personal property that sales or offers or attempts to sell other classes of personal property not mentioned are included within the above exemption for works of necessity or charity. This section shall not apply to furnaces, kilns, plants, wholesale food warehouses, ship chandleries, and other business of like kind that may be necessary to be conducted on Sunday, nor to the publication, distribution and sale of newspapers or magazines, nor to the sale of motor fuels or oils, repair parts or accessories for immediate necessary use in connection with motor vehicles, boats or aircraft, nor to the operation of motion picture theatres, nor to sports, athletic events. scenic, historic and recreational and amusement facilities."*

the House also voted for the recodification bill. No one in either the House or the Senate, as previously pointed out, voted against either of the bills and there was no discussion in the House and Senate committees or on the floors of either body relative to retaining the old Sunday law in the recodification act.

Following the adjournment of the 1960 session of the General Assembly, the Virginia Code Commission treated chapter 267 of the 1960 Acts, the amended Sunday law, as an amendment and reenactment of § 18-329 as it existed prior to the convening of the 1960 session, and also as an amendment and reenactment of the relevant portions of the recodification act. Thus chapter 267 was codified in the 1960 supplement to the Code of 1960 as §§ 18.1-358, 18.1-358.1 and 18.1-358.2.

The appellants contend that the amended Sunday law, chapter 267, enacted as an amendment to Code § 18-329, with its effective date June 27, 1960, was expressly repealed by the provisions of paragraph 1[3] of the preamble and § 18.1-1[4] of the recodification act when it became effective on July 1, 1960.

They conceded in their argument that the repeal of the amended Sunday law by passage of the recodification act was a technical oversight and do not dispute that the legislative history of the two acts shows that the legislature did not intend to repeal the amended Sunday law. But they contend that it must be "presumed" that the amended Sunday law was repealed, irrespective of the legislative intent, since the language used in the recodification act, repealing Title 18 in its entirety, is clear and unambiguous; that it needs no interpretation and that the general rules of statutory construction permit none. We do not agree with that contention.

The rules of statutory construction were conceived and are applied to give effect to legislative intent—not to defeat it. All rules are subservient to that intent. *Shackelford* v. *Shackelford*, 181 Va. 869, 877, 27 S. E. 2d 354, 358.

In 82 C. J. S., Statutes, § 282, pp. 474-475, the rule of statutory construction dealing with statutes containing language of repeal is stated as follows:

"[A] statute purporting to repeal other statutes is subject to the

---

[3] "1. That Title 18 of the Code of Virginia, which title includes Chapters 1 to 11 and §§ 18-1 to 18-366, inclusive, of the Code of Virginia, as amended, is repealed."

[4] "18.1-1. All acts and parts of acts, all sections of this Code, and all provisions of municipal charters, inconsistent with the provisions of this title, are, except as herein otherwise provided, repealed to the extent of such inconsistency."

same rules of interpretation as other enactments, and the legislative intent will prevail over a *literal* interpretation. Even words of absolute repeal may be qualified by the intention manifested in other parts of the same act; and, according to some authorities, *an express declaration that a particular statute is repealed will not be given effect, where it is apparent that the legislature did not so intend * * *."* (Italics supplied.)

The voluminous recodification act was prepared by the Code Commission and printed well in advance of the convening of the 1960 session of the General Assembly. It was introduced on the first day of the session, which was more than two weeks prior to the introduction of the amended Sunday law. The approval and effective dates of the recodification act were subsequent to those of the amended Sunday law, and if we look only to those two dates, as the appellants would have us do, it may be said under a literal interpretation that the repealing clause in the preamble of the recodification act repealed the amended Sunday law after it had been effective for only four days. But the legislative history of the two acts clearly shows that the legislature did not intend such result. Indeed, the appellants concede that the legislature did not so intend. It is therefore our duty to reconcile the two acts and give expression to the intent of the legislature, if possible. 17 Mich. Jur., Statutes, §§ 97, 98, pp. 360, 361.

The acts may be reconciled by looking to the dates of their introduction, which this Court did in *Falls Church* v. *Fairfax County*, 151 Va. 672, 144 S. E. 870. See also *Dickinson* v. *Board of Supervisors*, 146 Va. 46, 57, 135 S. E. 826, 830. When we view the recodification act as of the date of its introduction, and consider its purpose and legislative history, it clearly appears that the legislature intended, from the language used in the preamble of the act repealing Title 18, to repeal the title as it existed prior to the convening of its 1960 session and not to repeal acts amending the title which may be introduced and passed later in the same session. Hence, the repealing clause in the preamble of the recodification act did not repeal the amended Sunday law.

Moreover, the new Sunday law was codified by the Code Commission under Title 18.1 and assigned §§ 18.1-358, 18.1-358.1 and 18.1-358.2. It never became a part of old Code Title 18, or §§ 18-1 to 18-366, inclusive, hence it was not repealed by the repealing clause in the preamble of the recodification act.

The language of the repealer clause contained in § 18.1-1 of the recodification act itself is simply a restatement of the rules of

statutory construction that a later act which is inconsistent with an earlier act, so that the two cannot be reconciled, repeals the earlier act. Such rule would apply whether the latter act contains words of repeal or not. This section adds nothing to and subtracts nothing from the rules of statutory construction relating to implied repeals. Even if it be said that the language used in § 18.1-1 modifies the repealer clause in the preamble to the extent of providing that all acts, Code sections, and municipal charters outside of old Title 18 are not repealed unless actually inconsistent with new Title 18.1, the amended Sunday law would not be repealed unless it is impossible to reconcile it with new Title 18.1. This is particularly true where the two acts were passed at the same session of the legislature. See *City of Richmond* v. *County Board*, 199 Va. 679, 685, 101 S. E. 2d 641, 645, 646; Crawford, Statutory Construction, § 311, p. 631; Sutherland, Statutory Construction, 3d ed., §§ 2020, 5201 and 5202. No inconsistency or repugnancy exists between the two acts. The amended Sunday law supplements the old law and seeks to carry out its same general purposes, but its provisions of enforcement are more effective.

The appellants next say that the action of the Code Commission in codifying the amended Sunday law into Title 18.1, and assigning it the designation of §§ 18.1-358, 18.1-358.1 and 18.1-358.2, and substituting it for the language of §§ 18.1-358 to 18.1-363, inclusive, as contained in the recodification act, was an unconstitutional usurpation of legislative power, since the legislature had done its own codifying upon the passage of the recodification act. There is no merit in this argument.

The 1948 session of the General Assembly, which enacted the Code of 1950, created by a separate act (chapter 262 of the Acts of 1948) the Virginia Code Commission as the permanent and official organ of the General Assembly to codify the general acts of each session. The powers of and limitations on the Code Commission are set out in Title 9, chapter 8, §§ 9-66 to 9-77.2, inclusive, of the Code of 1950, as amended.

Code § 9-72 makes it clear that the Code Commission should treat all particular acts of the 1948 session as having priority over the recodification act adopted at that session. It reads in part as follows:

"The amendment by the General Assembly at the Session of nineteen hundred forty-eight of any statute as it existed prior to nineteen hundred forty-eight, or any part thereof, shall operate as an amendment of so much thereof as is contained in the Code as adopted, and

*such amendment shall be substituted therefor in the Code * * *."*
(Italics supplied.)

Code § 9-75 directs the Commission as follows:

"Within thirty days after the adjournment sine die of each regular and extra session of the General Assembly subsequent to the session of nineteen hundred forty-eight, the Commission shall meet and *shall forthwith proceed to codify into the Code the acts of that session in the same manner as is provided in this chapter for the codification of the acts of the session of nineteen hundred forty-eight."* (Italics supplied.)

Code § 9-76 deals with the continuing duty of the Code Commission and provides in part:

"The Commission shall give effect to the repeals, amendments and reenactments mentioned in §§ 9-71 and 9-72."

It is clear from the provisions of § 9-75 and the general purposes of recodification acts that it was the intent of the 1960 General Assembly that the Code Commission codify all general enactments of the 1960 session and give effect to all amendments, repeals and reenactments, as they were directed by the 1948 session of the General Assembly to deal with its acts.

In codifying the amended Sunday law into the 1960 Cumulative Supplement to the Code of 1950, and designating it as §§ 18.1-358, 18.1-358.1 and 18.1-358.2, the Code Commission was acting not only in accordance with existing statutes dealing with recodification, and the intent of the 1960 General Assembly, but in compliance with the established policy of this State dealing with recodification acts as found in the Code of 1887 (§ 4203), Code of 1919 (§ 6568), Code of 1950 (§ 1-7), and a well-recognized rule of statutory construction that a particular enactment dealing with one subject will not generally be repealed by a later general enactment covering a number of subjects; and this is particularly true of two enactments passed at the same session of the legislative body. Sutherland, Statutory Construction, 3d Ed., § 2021.

For the reasons given, the amended Sunday law, chapter 267, was not repealed by the provisions of the recodification act, chapter 358.

The second question presented is whether chapter 267 violates Article I, § 16, and Article IV, § 58, of the Constitution of Virginia.

While it is true that the first Sunday laws were motivated by religious forces, both in England and the American colonies, they have undergone such changes in Virginia and other States that they can no longer be considered as retaining any semblance of religious character.

The first Sunday observance law in Virginia was passed in 1610, and it provided that "Every man and woman shall repair in the morning to the divine service * * *." Johnson and Yost, Separation of Church and State in the United States, 224 (1948), cited in Comment, 59 Col. L. Rev. 1192, n. 2 (1959). In 1623 the failure to attend church was punishable by a fine payable in tobacco. 1 Hen. Stat. 123.

The statute of 29 Charles II, ch. 7 (1678), which enjoined all work on Sunday, was adopted by some of the American colonies as a part of the common law of England. But in 1776 the Virginia General Assembly repealed the former colonial law requiring church attendance and made it clear that the separation of church and State would be complete in Virginia. 9 Hen. Stat. 164. For an excellent and more complete history dealing with the question of Sunday laws as they relate to the principle of religious freedom in Virginia and England, see *McGowan* v. *Maryland*, 336 U. S. 420, 6 L. ed. 2d 393, 402-407, 81 S. Ct. 1101, 1108-1112 (1961).

The forerunner of the present Sunday law, with clearly secular purposes, was adopted in Virginia in 1779.

The law is well settled in Virginia that a Sunday law enacted under the police power of the State for the purpose of providing a day of rest for persons, to prevent the physical and moral debasement which comes from uninterrupted labor, does not infringe upon the constitutional guarantee of religious freedom. *Pirkey Bros.* v. *Commonwealth*, 134 Va. 713, 717-718, 114 S. E. 764, 765, 29 A. L. R. 1290; *Rich* v. *Commonwealth*, 198 Va. 445, 448-449, 94 S. E. 2d 549, 552. See also 50 Am. Jur., Sundays and Holidays, § 5, pp. 803-804.

This principle, that Sunday laws enacted for the purpose of providing a day of rest and relaxation do not infringe upon the constitutional guarantee of religious liberty under the First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, was upheld by the United States Supreme Court in the recent cases of *McGowan* v. *Maryland, supra; Gallagher* v. *Crown Kosher Super Market of Mass.*, 366 U. S. 617, 6 L. ed. 2d 536, 81 S. Ct. 1122; *Braunfeld* v. *Brown*, 366 U. S. 599, 6 L. ed. 2d 563, 81 S. Ct. 1144; *Two Guys from Harrison—Allentown, Inc.* v. *McGinley*, 366 U. S. 582, 6 L. ed. 2d 551, 81 S. Ct. 1135.

In the present case the appellants do not contend that they have been deprived of their religious liberty, in fact there is nothing in the evidence indicating what religious faith they subscribe to. Their sole contention in the pleadings is that the new Sunday law deprives them

of a substantial part of their business opportunities by not being able to keep open on Sundays. The evidence shows that the amended Sunday law was sponsored by the Virginia Retail Merchants Association to provide a day for rest, social intercourse and recreation, and not as a day for required religious observance. The mere fact that the legislature selected Sunday, which is the traditional day for religious observance, as the day for closing stores does not change the character of the amended Sunday law from a secular to a religious law.

For the reasons given, the amended Sunday law does not violate either Article I, § 16, of the Constitution of Virginia or the First Amendment to the Constitution of the United States, made applicable to States by the Fourteenth Amendment.

The appellants first contend under the third question presented that the classification in the amended Sunday law unreasonably, unnaturally and arbitrarily separates persons, places and things, and that the act is special legislation in violation of Article IV, § 63, clause 18, of the Constitution of Virginia. This contention is without merit.

It is well settled that constitutional prohibitions against special legislation do not prohibit classification. But the classification "must be natural and reasonable, and appropriate to the occasion." *Joy, et al.* v. *Green*, 194 Va. 1003, 1008, 1009, 76 S. E. 2d 178, 182; *County Board of Supervisors* v. *American Trailer Co.*, 193 Va. 72, 78, 79, 68 S. E. 2d 115, 120; *Martin's Ex'rs* v. *Commonwealth*, 126 Va. 603, 612, 102 S. E. 77, 80.

As stated in *Joyner* v. *Centre Motor Co.*, 192 Va. 627, 633, 66 S. E. 2d 469, 472, we must determine in each case whether the act makes an "arbitrary separation," and this depends upon the purpose and subject of the particular act and the circumstances and conditions surrounding its passage.

The necessity for and the reasonableness of the classification are primarily questions for the legislature. If any state of facts can be reasonably conceived that would support it, that state of facts at the time the law was enacted must be assumed. *Martin's Ex'rs* v. *Commonwealth, supra*, 126 Va. at p. 612, 102 S. E. at p. 80; *Joy, et al.* v. *Green, supra*, 194 Va. at p. 1009, 76 S. E. 2d at p. 182. The presumption is that the classification is reasonable and appropriate and that the act is constitutional unless illegality appears on its face. *Joyner* v. *Centre Motor Co., supra*, 192 Va. at p. 635, 66 S. E. 2d at p. 474; *Joy, et al.* v. *Green, supra*, 194 Va. at p. 1009, 76 S. E. 2d at p. 183.

The amended Sunday law contains the same general prohibition

against working or transacting business on Sunday, except in household or other work of necessity or charity, found in the old statute. It then declares as a matter of law that the exemption for "works of necessity or charity" shall not include the sale of thirty specific types of commodities, none of which appears as being necessary to be sold on Sunday in order to promote health, safety and the general welfare, with six parenthetical "exclusions." The prohibition against the sale of the specified commodities is inclusive enough to close a great majority of stores while leaving open restaurants, drug stores, recreation centers and filling stations, which is in accordance with the general purpose and object of the law.

Each of the "exclusions" qualifies an otherwise broad generic category. They amount to no more than a recognition of the legislature that the broad language used in listing the prohibited commodities would include certain articles the sale of which it did not consider as a matter of law to be contrary to the object and purpose the legislation sought to accomplish. The "exclusions" do not grant exemptions from the general prohibition of the statute, and if the sale of the specific excluded items was challenged the test of whether they were "works of necessity or charity" would be determined by a jury unless, if, in the particular case reasonable minds could not differ on the question.

The statute then states that no inference shall arise from the enumeration of the thirty classes of personal property that sale of other classes of personal property not mentioned are included within the exemption for "works of necessity or charity."

Lastly, the statute provides for the same exemptions found in the old statute and adds thirteen others, which on their face are works of necessity under the modern day conception of things.

The evidence shows that the amended statute was unanimously passed by the General Assembly after careful study and research, and it seeks to promote and strengthen the established policy of Virginia in favor of a common day of rest, relaxation and recreation for as many persons as possible who are not engaged in "works of necessity or charity." There are some 160,000 persons employed in mercantile establishments in Virginia. Such legislation was necessary to provide a common day of rest because some businesses were operating in several sections of the State on Sunday, the same as on any other day of the week, and others would necessarily follow to meet competition.

Testing the act by the principles hereinbefore set out and in the

light of the evidence, we are of opinion that the amended Sunday law meets the requirements of a general act. It affects all persons similarly situated or engaged in the same business throughout the State without discrimination. The statutory scheme expressly declaring that the sale of the specified commodities on Sunday are not "works of necessity or charity" as a matter of law, with certain "exclusions" from the broad general categories enumerated and the exceptions to the general purpose of the act as to necessities, recreation and conveniences, emphasize that the legislature has reasonably found, after careful study, what are "works of necessity or charity" and has recognized that if Sunday is to be observed as a day of rest, relaxation and recreation, the legislation was necessary. The act does not show on its face, nor does it appear from the evidence, that the classifications unreasonably and arbitrarily separate persons, places or things in violation of the prohibition against special legislation under the Constitution of Virginia. The classifications bear a reasonable and substantial relation to the object sought to be accomplished by the legislation. All classifications import some degree of discrimination, but the legislature is not required to achieve "mathematical nicety." See *Lindsley* v. *Natural Carbonic Gas. Co.*, 220 U. S. 61, 79, 31 S. Ct. 337, 55 L. ed. 369.

The appellants also say under this assignment of error that the General Assembly, by the very nature of things, cannot define "works of necessity" because this Court said in *Pirkey Bros.* v. *Commonwealth, supra; Francisco* v. *Commonwealth*, 180 Va. 371, 23 S. E. 2d 234; and *Rich* v. *Commonwealth, supra,* that the term "works of necessity," as contained in the old Sunday law, was an elastic phrase, to be defined in the light of the age in which we live, and that it might be considered differently in different communities of the State.

The answer to this argument is that the old law fixed no standard as to what was meant by "works of necessity" and the test to be applied was left to the jury to decide, if reasonable men could not agree on its application to a particular state of facts.

Definition is of the very nature of legislation. *Commonwealth* v. *Whiting Oil Co.*, 167 Va. 73, 76-77, 187 S. E. 498, 499-500. It is in this very field that the legislative branch fulfills its strongest function by determining policy on questions over which reasonable men may disagree.

In *Petit* v. *Minnesota*, 177 U. S. 164, 20 S. Ct. 666, 44 L. ed. 716 (1900), the Minnesota Sunday law, Gen. St. 1894, § 6513, M.S.A. §§ 614.29, 614.30, prohibited all commercial activity on Sunday

except works of necessity and charity, and "necessity" was defined so as to exclude barbering on Sunday. The Court said, 177 U. S. at p. 166: "The legislature had the right to define its own language and the statute thus interpreted could not reasonably be held to have made any discrimination."

■ The appellants next say, under the third question raised, that the Sunday law, before and after its 1960 amendment, denies to them equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States. This contention is without merit.

The equal protection clause of the Fourteenth Amendment does not deprive States of the power to make a reasonable classification in adopting police laws, provided the classification is based on some real and substantial relation to the objects sought to be accomplished by the legislation, and one assailing the classification has the burden of showing it is essentially arbitrary. *C. I. T. Corp.* v. *Commonwealth*, 153 Va. 57, 68, 149 S. E. 523, 527; *McGowan* v. *Maryland, supra.*

In *Rich* v. *Commonwealth, supra*, 198 Va. at p. 452, 94 S. E. 2d at p. 554, decided in 1956, this Court sustained the validity of § 18-329 as it existed prior to 1956, with the many exceptions therein now appearing in the amended Sunday law, as against the contention that the statute violates the Fifth and Fourteenth Amendments to the Constitution of the United States. See also *Pirkey Bros.* v. *Commonwealth, supra*, 134 Va. at pp. 724, 725, 114 S. E. at p. 767.

In the recent cases of *Two Guys from Harrison—Allentown, Inc.* v. *McGinley, supra*, and *Braunfeld* v. *Brown, supra*, the United States Supreme Court dealt with the Pennsylvania Sunday statute, 18 P. S. §§ 4699.4, 4699.10, which is somewhat similar to the amended Sunday law in Virginia in that it specifically enumerates practically the same items specified in the Virginia statute that cannot be sold as a matter of law on Sunday. The Court held that the statute did not violate the equal protection clause of the Fourteenth Amendment.

The appellants' argument relating to a denial of "equal protection" is mainly directed to the "exclusions" set out in the act. Here again, the "exclusions" apply to all who are similarly situated or engaged in the same kind of business, without discrimination. The equal protection clause goes no further than prohibiting *invidious* discrimination, and the "exclusions" do not fall within that category. *Williamson* v. *Lee Optical Company*, 348 U. S. 483, 489, 75 S. Ct. 461, 99 L. ed. 563.

This brings us to the fourth question presented, the cross-error assigned to the decree of the court below.

In *McGowan* v. *Maryland, supra*, the contention was made that a

section of the Maryland Sunday statute, Code 1957, art. 27, § 509, violated the "equal protection" clause which permitted certain merchants who were operators of bathing beaches, amusement parks, etc., to sell merchandise on their premises which were customarily sold or incidental to the operation of their business while prohibiting the sale by other vendors of the same merchandise at other places. The Court, in rejecting the contention, said:

"[I]t would seem that a legislature could reasonably find that these commodities, necessary for the health and recreation of its citizens, should only be sold on Sunday by those vendors at the locations where the commodities are most likely to be immediately put to use. Such a determination would seem to serve the consuming public and at the same time secure Sunday rest for those employees, like appellants, of all other retail establishments. In addition, the enforcement problems which would accrue if large retail establishments, like appellants' employer, were permitted to remain open on Sunday but were restricted to the sale of the merchandise in question would be far greater than the problems accruing if only beach and amusement park vendors were exempted. * * * [T]here has been no indication of the unreasonbleness of this differentiation." 81 S. Ct. at p. 1106.

The holding in the *McGowan* case is determinative of the appellees' assignment of cross-error. That part of the decree of the court below holding unconstitutional the "exclusion" in the amended Sunday law relating to the sale of sporting goods on the premises where sports, athletic events, or recreational activities are conducted, while denying that right to other vendors of the same merchandise, was error. Hence, it is not necessary that we deal with the fifth question presented dealing with the issue of severability.

For the reasons given, the decree of the court below is affirmed in part and reversed in part.

*Affirmed in part; reversed in part.*