## Richmond

CITY COUNCIL OF THE CITY OF EMPORIA

V.

JEAN NEWSOME, ET AL.[1]

Record No. 811058.

January 20, 1984.

Present: All the Justices.

[1] The appellees include qualified voters of the City of Emporia and Greensville County and the Board of Supervisors of Greensville County. The Board is the only party-appellee before this Court.

*John F. Kay, Jr. (Theodore J. Burr, Jr., City Attorney; Henry T. Wickham; Carter Glass, IV; David G. Shuford; Mays, Valentine, Davenport & Moore, on briefs), for appellant.*

*Robert C. Fitzgerald (Russell O. Slayton, Jr., County Attorney; Myron C. Smith; Fitzgerald and Smith, on brief), for appellees.*

COCHRAN, J., delivered the opinion of the Court.

In this appeal, City Council of the City of Emporia (Council) challenges consolidaton proceedings initiated under the provisions of Code § 15.1-1132 (Cum. Supp. 1980).[2]

---

[2] This statute (amended by Acts 1981, c. 78) provided in pertinent part:

§ **15.1-1132. Voters' petition requesting consolidation agreement and referendum.** — (a) The qualified voters of any county, city or town whose governing body has not taken the initiative under § 15.1-1131 may, by filing with the governing body of such county, city or town a petition signed by not less than ten per centum of the qualified voters of the county, city or town voting in the last preceding presidential election, which number in no case shall be less than fifty, asking the governing body to effect in accordance with the preceding section (§ 15.1-1131), a consolidation agreement with the counties, cities and towns named in the petition and to petition the judge for a referendum on the question, require the governing body so to proceed. A copy of the petition of the voters shall also be filed with the judge of each circuit court having jurisdiction in the county or town or the judge of the circuit court in the city. If the governing body is able within one year thereafter to effect such consolidation agreement, the procedure shall be the same as hereinbefore set forth. If the governing body within such period of time is unable, or for any reason fails, to perfect such consolidation agreement then the judge of the circuit court having jurisdiction in the county or town or the judge of the circuit court of the city shall appoint a committee of five representative citizens of the county, city or town

Pursuant to that statute, the required number of qualified voters in the City of Emporia and Greensville County filed petitions asking their respective governing bodies to perfect an agreement consolidating the City and the County and to petition the judge of the circuit court for a referendum on the question. Copies of the petitions were filed with the judge in July 1978.

The governing bodies failed to reach agreement within the prescribed period of one year, and the petitioning voters moved the trial court to appoint committees to act for and in lieu of the governing bodies. The Board of Supervisors (Board) moved to intervene as a party in support of the proceedings. Council filed an answer and request to intervene in which it stated its conclusion that consolidation was not in the best interests of the citizens of Emporia. Council also moved to dismiss the proceedings on the ground that the statute "constitutes an unlawful delegation of legislative authority . . . in violation of . . . the Virginia Constitution."

By order entered April 1, 1981, the trial court granted the motions to intervene, denied Council's motion to dismiss, and appointed five-member committees, as authorized by statute, to "perfect the consolidation agreement, and report same to [the] Court, no later than September 1st, 1981." The order incorporated by reference a "Charge to the Citizens Committee on Consolidation" defining the committees' duties, powers, and authority. Included in the Charge was an instruction that the committees consider for inclusion in the agreement provisions set forth in Code § 15.1-1135.[3]

---

to act for and in lieu of the governing body in perfecting the consolidation agreement and in petitioning for a referendum.

[3] This statute provides in pertinent part:

**Optional provisions of consolidation agreement or plan.** — Any such consolidation agreement or plan may contain any of the following provisions:

(1) That in any territory a part of the consolidated city, or county proposed to be included therein, there shall be no increase in assessments, except for permanent improvements made after the consolidation, for a period of not exceeding five years.

(2) That the rate of tax on real property in any such territory shall be lower than in other territory of the consolidated unit for a period of five years, provided that any difference between such rates of taxation shall bear a reasonable relationship to differences in nonrevenue-producing governmental services giving land urban character which are furnished in such territories.

(3) That in any area specified in such agreement or plan there may, for the purpose of repaying existing indebtedness chargeable to such area prior to consolidation, be levied a special tax on real property for a period not exceeding twenty years,

On appeal, Council contends, as it did in the trial court, that the appointment of a committee of citizens to act for and in lieu of Council was an unconstitutional delegation of legislative authority. The proposed consolidation agreement, Council says, may include in optional provisions the power to set a lower tax rate in certain areas of the consolidated city or county and to levy a special tax on real property in certain areas. Therefore, the argument continues, the enabling statute violates the provisions of Article VII, Section 5 of the Virginia Constitution, requiring that local governing bodies be elected by the qualified voters, as well as the holding of *Wright* v. *Norfolk Elec. Bd.*, 223 Va. 149, 286 S.E.2d 227 (1982), decided after judgment was entered below, that the power of assessment and taxation is beyond the reach of initiative statutes. We disagree with both contentions.

The General Assembly has demonstrated an increasing interest in facilitating the consolidation of political subdivisions either with or without the approval of local governing bodies. In 1940, an enabling statute was enacted which was severely limited in its applicability. Acts 1940, c. 395. The 1940 Act established the format for effecting the authorized consolidation. In addition to providing for the initiation of proceedings by the local governing bodies, it authorized qualified voters in each jurisdiction to force action on consolidation by petitioning the proper court to appoint a five-member citizen committee "to act for and in lieu of" the governing body "in perfecting the said consolidation agreement and in petitioning for a referendum."

In 1948, the statute was amended to include mandatory provisions now found in Code § 15.1-1133 and optional provisions now found in Code § 15.1-1135, subsections (1) through (8). Acts 1948, c. 354. In 1962, in a major revision of the laws pertaining to the government of counties, cities, and towns, the provisions for consolidation were made applicable generally to all political subdivisions. Acts 1962, c. 623, p. 1203. The provisions permitting qualified voters to initiate the proceedings when their local governing body fails to act have been retained in substantially the same language that was used in the 1940 Act. The statute has continuously encouraged voluntary action by the local governing bodies, however, by authorizing them to appoint and compensate

which may be different from and in addition to the general tax rate throughout the entire consolidated city, county, or counties, as the case may be.

citizen advisory committees to assist in the preparation of consolidation agreements. *See* Code § 15.1-1131.

■ Every law enacted by the General Assembly carries a strong presumption of validity. Unless a statute clearly violates a provision of the United States or Virginia Constitutions, we will not invalidate it. *See Henrico County* v. *City of Richmond*, 106 Va. 282, 292, 55 S.E. 683, 686-87 (1906), where we upheld an annexation statute that was challenged as an unconstitutional delegation of legislative authority to the annexation court. See also *Bull* v. *Read*, 54 Va. (13 Gratt.) 78 (1855), where we rejected the claim that a legislative act conditioned upon voter approval in a referendum was an unconstitutional delegation of legislative authority to the voters.

■ The obvious purpose of the consolidation statute is to foster and promote the consolidation of political subdivisions, preferably by action of the respective governing bodies. Recognizing, however, that a decision by the electorate on consolidation may be unduly delayed by a governing body unwilling or unable to act, the General Assembly provided for proceedings to be initiated by interested citizens.

■ In requiring the local judge to appoint a citizen committee to act in "perfecting the consolidation agreement and in petitioning for a referendum," the statute is not an unconstitutional delegation of legislative authority to the committee. The committee's function is to draft an agreement, just as the function of an advisory committee appointed by one of the governing bodies is to assist in drafting an agreement. In drafting the agreement to be submitted to the voters, the committee is required to include certain provisions set forth in § 15.1-1133, and is authorized to include any or all the optional provisions set forth in § 15.1-1135. Regardless of the provisions included, however, the agreement does not levy taxes or make assessments. It may contain tax-related proposals for submission to a referendum, but it is not a tax ordinance. In this respect, it is distinguishable from *Wright*.

In *Wright*, a committee of private citizens, proceeding under the initiative and referendum provisions of the charter of the City of Norfolk, drafted an ordinance setting the real estate tax rate in that city and petitioned the court to order a referendum. The circuit court ruled that the charter provisions were unconstitutional and dismissed the petition. On appeal, we affirmed this ruling. We held that as only the local governing body under Article VII, Sec-

tion 7 of the Virginia Constitution may pass an ordinance levying taxes, this function could not constitutionally be delegated to private citizens. We invalidated the charter provisions as applied in that case.

In the present case, the committees are not drafting a tax ordinance; they are merely drafting a proposed contract. If and when the voters approve the agreement, the governing bodies will continue to carry out their function of enacting tax ordinances. We hold that § 15.1-1132 is not facially unconstitutional.

■ Council next argues that the trial court erred in requiring the City to pay a proportionate share of the costs incurred by the citizen committee. The court in its Charge to the committees authorized the expenditure of "such reasonable sums as are necessary to employ a secretary and to purchase supplies." Apportioning these "costs" roughly on the basis of population, the court imposed two-thirds against the County and one-third against the City. The court further directed that if the assistance of experts were required the committees should report the costs and request approval of the court for employment of such experts.

Council says that there is no statutory authority for the trial court to require the City to pay the expenses of the committee appointed to act for and in lieu of Council. Invoking the provisions of Article VII, Section 7, Council says that only the local governing body may appropriate money and incur debt. We do not perceive the court's order, however, to remove these functions from the local governing body.

It is true the statute does not expressly provide for the payment of the committee's expenses. Neither does § 15.1-1131 provide for paying the expenses of an advisory committee appointed by the local governing body, although that statute expressly authorizes payment of "reasonable compensation" for the committee's services, subject to the circuit court judge's approval. Implicit in the procedure in respect to the advisory committees is authorization for the local governing body to pay the necessary expenses of its advisory committee.

As to the committees drafting the agreement for the local governing bodies, they are subject to the control and direction of the trial court. The General Assembly has mandated the present proceeding, to which the City and County are parties. By placing citizen-initiated consolidation proceedings under the control, supervision, and direction of the courts, the General Assembly made

available the flexibility of judicial discretion in carrying out the legislative intent. The courts implicitly have the power to enter such orders as may reasonably be necessary to comply with the legislative mandate. The courts, therefore, have the power to order payments of costs incurred during the proceedings and to apportion these costs among the parties as their interests may appear. Such action does not attempt to appropriate money or to incur debt on behalf of the local governing body. It merely imposes a legal obligation on a party to litigation. How the party discharges the legal obligation is for its own determination. If a judgment were obtained against a local governing body in this or any other case, the governing body would have the duty and privilege of appropriating money and, if necessary, borrowing for the purpose, to satisfy the judgment. This is an analogous situation.

■ Finally, Council contends that the trial court erred in directing the committees to function as one committee. This arrangement, Council says, frustrates the purpose of having each committee act for its governing body and may permit a consolidation agreement to go to referendum without the approval of a majority of the representatives of one of the political subdivisions. We disagree.

The trial court's order required the two committees to perfect the consolidation agreement. The judge's Charge directed the members of the committees to function as one committee, to appoint two co-chairmen, and to hold such meetings as are necessary to accomplish its purposes within the specified time period. Only one agreement is to be perfected. Obviously, the committees may perform their task more efficiently in a joint effort rather than in independent action by each committee with interminable referrals to the other. Although the trial court did not so specify, since each committee acts for its governing body, a majority of each committee must approve the agreement, just as a majority of the governing body must approve an agreement that is not citizen-initiated. Indeed, the Board concedes that the agreement must be approved by a majority of the members of each committee. We hold that the court did not err in directing that the committees operate as a single entity in preparing and perfecting the agreement.

For the reasons assigned, we will affirm the judgment of the trial court in all respects.

*Affirmed.*