## William L. Caldwell

### v.

## Seaboard System Railroad, Inc.

Record No. 870481

## Seaboard System Railroad, Inc.

### v.

## William L. Caldwell

Record No. 870490

June 9, 1989

Present: All the Justices

*Eddie W. Wilson; George Rutherglen (John W. Hall,* ·on briefs), for appellant. (Record No. 870481)

*William T. Prince; Samuel J. Webster (Leonard C. Heath, Jr.; Williams,. Worrell, Kelly & Greer, P.C.,* on brief), for appellee. (Record No. 870481)

*William T. Prince; Samuel J. Webster (Leonard C. Heath, Jr.; Williams, Worrell, Kelly & Greer, P.C.,* on briefs), for appellant. (Record No. 870490)

*Eddie W. Wilson; George Rutherlgen (John W. Hall,* on brief), for appellee. (Record No. 870490)

*Amicus Curiae:* Norfolk and Western Railway Company (William B. Poff; Terri Faye Dial; Woods, Rogers & Hazlegrove, on brief), for appellant. (Record No. 870490)

Justice Whiting delivered the opinion of the Court.

In one of these two appeals (Record No. 870490), we decide the constitutionality of that part of the *forum non conveniens* statute, Code § 8.01-265, which precludes dismissal of actions arising in jurisdictions other than Virginia.[1] In the other appeal (Record No.

---

[1] Code § 8.01-265 provides in pertinent part that:

the court wherein an action is commenced may, upon motion by any defendant and for good cause shown, transfer the action to any fair and convenient forum having jurisdiction within the Commonwealth . . . . [but no] action brought in a permissible forum pursuant to § 8.01-262 [shall] be dismissed on the basis that there is a more convenient forum in a jurisdiction other than in the Commonwealth of Virginia.

870481), should we hold that provision constitutional, we determine whether the trial court erred in requiring the plaintiff to remit $500,000 of a $1,500,000 verdict awarded him.

On April 4, 1984, William L. Caldwell, a North Carolina resident and employee of Seaboard System Railroad, Inc. (Seaboard), was alighting from a Seaboard locomotive to throw a switch in its Charlotte, North Carolina, rail yard when the locomotive's horn was sounded near his ear, causing a hearing loss and other disabilities. On February 12, 1986, Caldwell filed this personal injury action against Seaboard in the court below pursuant to the Federal Employers' Liability Act. 45 U.S.C. §§ 51-60 (1982).

Because Seaboard regularly and systematically conducted business activity in the City of Portsmouth, Portsmouth was a permissible venue under Code § 8.01-262. Seaboard filed an objection to venue and a motion to dismiss, contending that: (1) the Circuit Court of the City of Portsmouth was not a convenient forum; and (2) the appropriate court in Charlotte, North Carolina, where the cause of action arose, would be a more convenient forum. The trial court denied the motion, citing Code § 8.01-265. Thereafter, the case was tried to a jury, which returned a $1,500,000 verdict for Caldwell. The trial court required Caldwell to remit $500,000 of the verdict, or submit to a new trial. Caldwell accepted the remittitur under protest and appealed. Seaboard appealed the order denying its motion to dismiss. We granted both appeals, and we will dispose of the constitutional challenge first.

### Denial of Motion to Dismiss (Record No. 870490)

Seaboard concedes that the Commonwealth is not constitutionally required to give any defendant the right to seek to have a case transferred to a more convenient forum,[2] but argues that if the legislature adopts a statute giving such a right to defendants sued on Virginia causes of action, it must extend that right to defen-

---

[2] This doctrine, known as *forum non conveniens*, originated in eighteenth century Scotland. W. Gloag and R. Henderson, *Introduction to the Law of Scotland* 22 (3d ed. 1939). It permitted a court, in its sound discretion, to decline to exercise its jurisdiction even though the plaintiff brought his action in a proper jurisdiction and venue. It did not contemplate a transfer of the case to another forum, but rather its dismissal. It is applied where a more appropriate forum is available, and the defense is so handicapped by the difficulties and cost of trying the case in the forum as to make a trial unfair to the defendant or burdensome to the public interest. *See Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 507-09 (1947).

dants sued on causes of action arising outside Virginia. Specifically, Seaboard maintains that the part of Code § 8.01-265 which prevents trial courts from dismissing any out-of-state actions on the grounds of *forum non conveniens*, violates several provisions of the Virginia and United States Constitutions. Seaboard's primary contention is that there is no rational basis for applying *forum non conveniens* to causes of action arising in Virginia, but not those arising outside the Commonwealth.

■ We consider Seaboard's constitutional attack against the background of our previous decisions. Every statute "carries a strong presumption of validity," and unless it "clearly violates a provision of the United States or Virginia Constitutions, we will not invalidate it." *City Council v. Newsome*, 226 Va. 518, 523, 311 S.E.2d 761, 764 (1984).

> [T]he party assailing the legislation has the burden of proving that it is unconstitutional, and if a reasonable doubt exists as to a statute's constitutionality, the doubt must be resolved in favor of its validity. Indeed, because '[a] judgment as to the wisdom and propriety of a statute is within the legislative prerogative,' courts will declare legislation invalid only when it is 'plainly repugnant to some provision of the state or federal constitution.'

*Etheridge v. Medical Center Hospitals*, 237 Va. 87, 94, 376 S.E.2d 525, 528 (1989) (citations omitted).

■ "The necessity for and the reasonableness of [a] classification are primarily questions for the legislature . . . . The presumption is that the classification is reasonable and appropriate and that the act is constitutional unless illegality appears on its face." *Mandell v. Haddon*, 202 Va. 979, 989, 121 S.E.2d 516, 524 (1961). Because this statute does not affect fundamental rights, it is not subject to strict scrutiny to determine if it is necessary to promote a compelling or overriding governmental interest; instead, we review it to see that it is neither arbitrary nor discriminatory, and that it bears a reasonable relation to a proper purpose. *Etheridge*, 237 Va. at 97, 376 S.E.2d at 530.

With those principles in mind, we consider the statute and its purposes.[3] Are there rational reasons for different treatment of

---

[3] Because the statute is unambiguous, we do not consider its legislative history, *Peery v. Board of Funeral Directors*, 203 Va. 161, 165, 123 S.E.2d 94, 97 (1961), nor will we

causes of action arising within the state and those arising elsewhere? We believe there are at least two such reasons, either of which would supply a rational basis for a different treatment.

■ First, there is a significant distinction between the transfer of an action and its dismissal. Dismissal involves a risk that a plaintiff may not be able to assert his right of action in another court because of the bar of the statute of limitations or some other reason. There is no such risk in the transfer of cases within the state. Seaboard suggests several ways to minimize those risks. But these arguments are more appropriately addressed to the legislature. *See Heublein, Inc.* v. *Alcoholic Beverage Control Dept.*, 237 Va. 192, 201, 376 S.E.2d 77, 81 (1989).

■ Second, in the adoption of Code §§ 8.01-328 to -330, the legislature evinced a policy of extending the jurisdiction of its courts to the maximum extent permitted by the Due Process Clause of the United States Constitution. *Kolbe, Inc.* v. *Chromodern, Inc.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971). The use of *forum non conveniens* to deny the access to Virginia courts provided by those statutes reduces the jurisdiction of Virginia courts and, therefore, affects that policy. The reconciliation of these competing policies is a matter of legislative discretion.[4] *Wood* v. *Board of Supervisors of Halifax Cty.*, 236 Va. 104, 115, 372 S.E.2d 611, 618 (1988).

■ Finding a rational basis for the statute, we conclude that it violates neither the Fourteenth Amendment Equal Protection Clause, *see Reed* v. *Reed*, 404 U.S. 71, 76 (1971), nor the Fourteenth Amendment Due Process Clause, *Williamson* v. *Lee Optical*, 348 U.S. 483, 487-88 (1955); *Etheridge*, 237 Va. at 97, 376 S.E.2d at 530. For the same reason, we find no violation of the Due Process Clause of the Constitution of Virginia, Article I, § 11, *Etheridge*, 237 Va. at 97, 376 S.E.2d at 530, or its prohibition against special or private laws, Article IV, §§ 14 and 15, *see Peery* v. *Board of Funeral Directors*, 203 Va. 161, 166-67, 123 S.E.2d 94, 98 (1961).

---

consider the motives of any particular legislator, as suggested by Seaboard, *Blankenship* v. *City of Richmond*, 188 Va. 97, 105, 49 S.E.2d 321, 324 (1948).

[4] For the same reason, we find no merit in Seaboard's argument that retention of actions arising outside Virginia unduly burdens the Virginia courts.

■ We need not consider Seaboard's contention that its rights under the Fourteenth Amendment Privileges and Immunities Clause have been violated. Corporations have no rights under that clause. *Asbury Hospital* v. *Cass County*, 326 U.S. 207, 210-11 (1945).

■ Next, Seaboard contends that the statute impermissibly burdens interstate commerce. Again, we review general principles before considering the specific issue.

> [I]n the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce . . . . When the regulation of matters of local concern is local in character and effect, and its impact on the national commerce does not seriously interfere with its operation . . . such regulation has been generally held to be within state authority.

*Southern Pacific Co.* v. *Arizona*, 325 U.S. 761, 767 (1945) (citations omitted).

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (citation omitted). State statutes which "burden interstate transactions only incidentally . . . . violate the Commerce Clause only if the burdens they impose on interstate trade are 'clearly excessive in relation to putative local benefits.'" *Maine* v. *Taylor*, 477 U.S. 131, 138 (1986). Neither party cites a case in which Commerce Clause considerations were discussed in relation to choice of a forum for litigation.

■ In our opinion, the attenuating effects, if any, upon interstate commerce inherent in the application of this statute are

slight, and are clearly overborne by a legitimate state interest in providing maximum access to its courts. Thus, we find no merit in the argument that interstate commerce is impermissibly burdened by the statute.

For the foregoing reasons, we will affirm the action of the trial court in denying the motion to dismiss.

### *Requirement of Remittitur* (Record No. 870481)

██ Because we have sustained the trial court's action in denying the motion to dismiss, we decide whether it abused its discretion in requiring Caldwell to remit $500,000 of the $1,500,000 verdict. Code § 8.01-383.1 "tacitly recognized and implicitly ratified" the common law power of a trial court to exercise its sound discretion in requiring remittitur in a proper case. *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 910, 224 S.E.2d 323, 331 (1976). Indeed, it is the trial court's duty to require remittitur where appropriate. *Edmiston* v. *Kupsenel*, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964). The issue here is whether the trial court has properly done so and given sufficient supporting reasons.

Caldwell has recovered a jury verdict. Therefore, in accord with familiar appellate principles, we view the facts in the light most favorable to him.

Caldwell testified that, just after the horn was sounded, he felt lightheaded and dizzy and, later, his ears started ringing and popping, and he had a bad headache. The train master took him to a clinic in Charlotte where Doctor Beard gave him a pain reliever, told him to stay away from loud noises until the ringing and popping stopped, and referred him to Doctor Coconus, described by Caldwell as an "ear doctor." Although Caldwell saw Dr. Coconus twice in a three-month period following his injury, he has been treated since by a Charlotte otolaryngologist of his choice.

Caldwell complains that his ears wake him at night. He testified that "they pop on me." "They still give me headaches [and] make me lightheaded at times." He cannot stay in a room or place with many people. Because the service at his church becomes "really loud at times," he has to attend his wife's church instead. At home he has problems with his family because: (1) in order to hear the television, he must increase its volume to a level too high for other members of the family; and (2) he does not answer the telephone in the next room because he cannot hear it. Because he gets lightheaded at times, he has difficulty in taking steps. Fur-

thermore, Caldwell says that he has not been allowed to return to work at Seaboard because of his hearing difficulties.

Expert witnesses indicated that the horn blast was at a noise level substantially in excess of maximum noise levels an ear can tolerate without injury to hearing and balance. This resulted in a permanent hearing loss in high frequency ranges of 22½ percent in Caldwell's right ear, and 7½ percent in his left ear, and significantly reduced his ability to understand what is being said in the presence of the background noise associated with a church or social function. This loss will increase in the normal aging process, and further exposure to excessive noise will cause more damage to Caldwell's hearing.

An expert also testified that when Caldwell is quiet, in reading or trying to sleep, he has tinnitus, or a constant ringing in his ears. The hearing loss also causes recruitment, which is an abnormal increase in loudness or adverse reaction to loud sounds. Thus, when sounds are made loud enough for Caldwell to hear, they seem too loud to him, and will also be distorted. His sense of balance has also been affected. Caldwell's disabilities render him unemployable by Seaboard.

Caldwell will have to be fitted with a hearing aid in each ear, at a cost of $500 to $700 each, and undergo annual audiological examinations at a cost of $40 to $60 each. In the last full year Caldwell worked, he earned $28,481.74, and was entitled to fringe benefits of $9,670.80 per year. He lost $37,687 in wages up to the date of trial.

Before the trial court ruled, it indicated that it considered: (1) the highest estimated percentage of Caldwell's hearing loss in the high frequency ranges, and his consequent disqualification from railroad work; (2) the estimate of an overall hearing disability of slightly less than two percent; (3) the fact that he could no longer work around loud noises; (4) evidence of tinnitus and of popping in Caldwell's ears; (5) the fact that Caldwell appeared to have no difficulty in hearing while he was testifying; and (6) its review of reported cases involving remittitur of verdicts awarding damages for hearing losses. Recognizing: (1) the difficulty in fixing damages for pain and suffering; (2) the fact that it is "basically a jury question"; (3) that it is "fundamental" that a court should not impose its judgment unless the verdict "is just so outrageous as to shock the conscience of the court"; but also (4) its duty to set aside a verdict or impose a remittitur upon the plaintiff in an ap-

propriate case, the trial court concluded that remittitur was required in this case.

▇▇▇ In sustaining a trial court's remittal order in *Bassett Furniture*, 216 Va. at 912, 224 S.E.2d at 332 (quoting *Hoffman v. Shartle*, 113 Va. 262, 264, 74 S.E. 171, 172 (1912)), we said that "the record must show the grounds relied on in support of such action, otherwise it cannot be upheld." Although Caldwell argues that *Bassett Furniture* requires a trial court to go down "a laundry list" of the grounds assigned by the *Bassett Furniture* trial court to support its order of remittal, we have not made those grounds talismanic. The trial court's conclusion that the damages are excessive does not have to be supported by express statements that the damages are so excessive as to shock the conscience, or that the size of the verdict created an impression that the jury had been influenced by passion or prejudice, or that the jury had misconceived or misinterpreted the facts or the law, *if* one or more of those factors may be fairly inferred from the reasons given for its action.

▇▇▇ In our opinion, the reasons the trial court assigned for remittitur sufficiently indicate its grounds and demonstrate that it "considered factors in evidence relevant to a reasoned evaluation of the damages incurred and to be incurred [and its order] will not be disturbed on appeal if the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence." *Id.* at 912, 224 S.E.2d at 332.

Caldwell argues that no such reasonable relation exists here. In our opinion, however, the jury could not have concluded that Caldwell had an economic loss greater than $291,427.59. It was comprised of: (1) $37,687.79 wages lost up to the date of trial; (2) the loss of an expected annual $9,670.80 in fringe benefits, for the balance of the 26 years he could have worked for the railroad until his mandatory retirement at age 70, for a total of $251,440.80 (not discounted to present value); and (3) what the parties apparently agreed were projected medical expenses of about $2,300. Therefore, the balance, exceeding $1,200,000, must have been for pain, suffering, and partial disability.

Even though Caldwell did not prove what his future wage losses would have been,[5] he argues that the evidence of future economic

---

[5] Because Caldwell was only partially disabled, the trial court held that such proof was inadmissible in the absence of evidence showing what he might have made in other employment. Caldwell assigned no error to this ruling.

losses, pain, suffering, and disability clearly justify an award for those elements of over $1,200,000, and, thus, make the trial court's reduction of the award manifestly unreasonable. We do not agree.

Caldwell's injury and disability have affected him, but the evidence does not indicate a substantial amount of pain, suffering, or embarrassment arising out of the hearing loss. Recognizing that Caldwell's employment and social activities will be somewhat limited by his hearing and balance impediments, the evidence does not indicate that he will not be able to find another job, or participate in most family and social activities not involving loud noises or requiring the ability to hear normally. Therefore, we cannot say the trial court's reduction of the jury's award was unreasonable. Accordingly, we will affirm its order of remittitur.

*Record No. 870481—Affirmed.*
*Record No. 870490—Affirmed.*

Justice Russell, with whom Justice Compton and Justice Thomas join, dissenting.

The records of this Court indicate that FELA plaintiffs have found a happy hunting ground in Portsmouth. Attorneys representing railroad employees claiming job-related injuries occurring all over the continental United States apparently think it worthwhile to bring actions against railroads in Portsmouth, or in neighboring Norfolk, rather than in the localities in which the accident occurred.\* One may only speculate as to the reasons for this phenomenon.

The cases are numerous and constitute a substantial part of the local judicial workload. The amounts in controversy are large, generating frequent appeals. Our hospitality to this nationwide litigation imposes a significant burden upon Virginia taxpayers.

---

\* A fair example of such a case, having no relationship to Virginia, was *Stephen R. Thomas v. Seaboard System Railroad, Inc.*, Record No. 870300, in which we denied an appeal in January 1988. There, the plaintiff was a brakeman riding in a caboose travelling from Danville, Illinois to Evansville, Indiana. Alleging that he had slipped on a wet floor in the caboose, he brought suit against the railroad in Portsmouth, Virginia, claiming $3,000,000.00 in damages.

The record in the present case indicates that of 201 FELA cases filed in Portsmouth during the years 1981-1986, 141 cases alleged accidents which occurred outside Virginia.

Against that background, the railroads contend that they are disadvantaged by being required to transport their witnesses and records across the country in order to stand trial on a battleground of their opponents' choosing, where they perceive themselves to be regarded as "target" defendants. Under the statute complained of here, they may not invoke the protection of *forum non conveniens* and under the FELA they cannot remove the case to a federal court. The plaintiff has absolute control of the venue and suffers no compensating disadvantage. We have often said that the parties to a lawsuit are entitled to a level playing field, but the decision handed down today marks a significant departure from that just rule.

This state of affairs may lead to results as absurd as they are unfair. In a hypothetical case, a trainman suffers injury on a westbound train passing through Bristol, Virginia. If he seeks to recover for his injuries in Portsmouth, the defendant railroad may, for good cause shown, obtain a transfer of the case to Bristol, where the cause of action arose, pursuant to Code § 8.01-265. On the other hand, if the accident occurs a few seconds later, when the train has crossed into Bristol, Tennessee, the plaintiff may force the railroad to defend itself in Portsmouth, Virginia. Thus, the defendant might have a strong incentive to contend that the accident occurred in Virginia, and the plaintiff to contend that it occurred in Tennessee.

There is, in my view, no conceivable rational basis for the statute under consideration. It makes a distinction between causes of action arising within and without the state which arbitrarily discriminates against FELA defendants and serves no valid state interest.

It is unnecessary to look to foreign authority for the origins of *forum non conveniens*. That doctrine has been codified by statute in Virginia, in strong language. Code § 8.01-257, which the majority opinion fails to mention, provides, in pertinent part: "[E]very action shall be commenced and tried in a forum convenient to the parties and witnesses, where justice can be administered without prejudice or delay." The non-dismissal clause under review here accords the benefit of that clear declaration of legislative policy to FELA plaintiffs, wherever their causes of action might arise, and accords it to defendants where the cause of action arises in Virginia, but denies it to FELA defendants where the cause of action arises outside the state.

The majority opinion labors diligently to suggest a rational basis which might justify this obvious discrimination. It suggests two possible justifications. The first suggested justification is that the state might have some concern that a plaintiff whose case is dismissed here might have nowhere else to go, "because of the bar of the statute of limitations or other reason." There are several answers to that concern. *Forum non conveniens* is discretionary. The court need not dismiss the plaintiff's case unless the plaintiff actually has an available forum, convenient to both parties, in which his case may be tried. If the court is in doubt, it need not immediately dismiss the case, but may grant a stay until the availability of the more convenient forum can be tested. Finally, the majority's concern about the statute of limitations is singularly unpersuasive. That situation would arise only where the plaintiff not only sought to disadvantage the defendant by bringing his action in an inconvenient forum, but compounded his unfair tactics by waiting until the latest possible time in which to do so.

The second "rational reason" given by the majority opinion to support the non-dismissal clause is that by adopting the long-arm statute, Virginia sought to extend its jurisdiction to the maximum limits permitted by the Due Process Clause, and that dismissals under *forum non conveniens* would contravene that policy. That reasoning is flawed in three respects. First, the General Assembly, by codifying *forum non conveniens* in the sweeping language of Code § 8.01-257, adopted that doctrine as legislative policy just as clearly as its extension of long-arm jurisdiction. The two policies coexist, and it is our duty to harmonize them, not to submerge one to serve the other. Second, *forum non conveniens* has no impact whatever on the court's jurisdiction. The doctrine concedes that the court has jurisdiction, but justifies a refusal to exercise it where to do so would be unfair to the defendant or burdensome to the public. *See Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 507-09 (1947). Finally, the extension of jurisdiction represented by the long-arm statutes is completely irrelevant to the present case. The defendant railroad does business in Virginia and has a statutory agent for the service of process. No long-arm proceedings are involved. We are discussing venue, not jurisdiction.

Because the discrimination and unfairness resulting from the non-dismissal clause of Code § 8.01-265 is obvious and egregious, and because I can perceive no rational justification for it, I would

hold it unconstitutional as applied, in violation of the Equal Protection Clause, U.S. Const. amend XIV, § 1.