## CIRCUIT COURT OF WARREN COUNTY

Thomas D. Logie et al.

v.

Town of Front Royal

Case No. (Law) 02-17-01

Cogil Corp.

v.

Town of Front Royal

Case No. (Chancery) 02-23

June 19, 2002

BY JUDGE JOHN E. WETSEL, JR.

These cases again came before the Court on June 19, 2002, on the Plaintiffs' motions to declare a town ordinance invalid because it authorized inspections by Town building officials to determine whether residential rental property was being maintained in accordance with the Uniform Statewide Property Maintenance Code. The ordinance also authorizes the town to discontinue electric service to any property found to be in violation of the Uniform Statewide Property Maintenance Code.

Having considered the parties' memoranda of authorities and arguments, the Court has made the following decision to deny the Town's Plea in Bar and to sustain the Town's Demurrers except for deciding that the Town may not terminate electric service for failure to comply with the Town's Property Maintenance Ordinance.

## I. *Statement of Material Facts*

The following material facts are not in dispute.

Virginia Code § 36-98 authorizes the Board of Community and Housing Development to adopt and promulgate a Uniform Statewide Building Code, whose purpose is to protect the health, safety, and welfare of the residents of the Commonwealth. Pursuant to this authority, the Board promulgated the Uniform Statewide Building Code which applies in the Town of Front Royal.

Part III (§§ 123.0 to 132.0) of the Building Code prescribes building maintenance regulations for the maintenance and repair of existing structures. Section 125.1 of Part III adopts and incorporates by reference the BOCA National Property Maintenance Code/1996 and contains the technical regulations for maintenance of existing structures.

A municipality must take official action in order to enforce the Property Maintenance Code, and the Town of Front Royal duly promulgated an ordinance adopting the Property Maintenance Code by enacting §§ 125-1 through 125-15 of the Front Royal Municipal Code (the "Ordinance"). The Town's Ordinance applies to dwelling units not occupied by any owner, any commercial and industrial properties where a complaint has been made, and properties where an unsafe condition is discovered by the Code Official (§§ 125-4). The Ordinance provides for an inspection and the issuance of a certificate of compliance with the Property Maintenance Code for applicable dwelling units where there is a change of occupancy after January 2, 2002. Section 125-10(A).

The purpose and intent of the Town Council in adopting the Ordinance is set forth in § 125-8 as follows:

The Town Council finds that certain residential rental housing, when not subject to either regular inspections or inspections upon a change in tenancy to ensure compliance with applicable building maintenance regulations, may become unsafe, a public nuisance, and unfit for human habitation. The Town Council further finds that certain residential housing within the town is in need of a housing inspection program to prevent property deterioration and neighborhood blight and to protect the public health, safety, and welfare by ensuring proper building

maintenance and compliance with applicable building regulations in rental dwelling.

Further, § 125-1 provides:

> The provisions, requirements, and regulations contained in the Property Maintenance Code, as may from time to time hereafter be amended by the State Board of Housing and Community Development, are hereby adopted by the town for the purpose of ensuring public safety, health, and welfare through proper building maintenance and use and continued compliance with minimum standards, including the elimination of conditions that render buildings unsafe, thereby constituting a danger to life and health or to public welfare. This chapter is adopted pursuant to § 36-105 of the Code of Virginia, 1950, as amended.

Virginia Code § 36-106(A) provides that a violation of the USBC shall be a misdemeanor and prescribes a fine of not more than $2,500.00. Pursuant to the state statute, § 125-15 of the Town Ordinance provides that a violation is a misdemeanor and prescribes a fine of not more than $1,000.00.

The state enabling statute has no provision for the termination of electric service in the event that maintenance deficiencies are discovered in a property. Pursuant to Virginia Code § 15.2-2109, the Town of Front Royal provides electricity in the Town. The Ordinance, § 125-11(A), provides that when inspections are triggered under the Ordinance that the unit's electricity shall not be reconnected without a certificate of compliance, and § 125-10(D)(2) provides for a temporary certificate of compliance, valid for up to 21 days, to permit the unit to be occupied. If, at the end of the 21 day period, the structure is found not to be in compliance, the property shall be vacated and the electric service terminated until the property is in compliance. Ordinance § 125-10(D)(2)(c).

To implement the administration of the Ordinance, the Town has appointed a Code Enforcement Official, and it has arranged to have appeals from its compliance orders heard by the Warren County Board of Building Code Appeals. Town Ordinance § 125-3.

The Plaintiffs seek to have the Town Ordinance declared invalid, claiming that the Ordinance authorizes unconstitutional "warrantless searches; that the Ordinance enforcement provisions exceed the powers conferred upon the Town by the General Assembly; and that the Ordinance violates the enabling provisions of the Code of Virginia because the Code Official is authorized to

administer and enforce the Ordinance, because the penalties in the Ordinance do not match the penalties in the Code, because appeals are to the Warren County Board of Zoning Appeals, and because electric service may be terminated to a property which is in violation of the Ordinance

In *Logie et al. v. Town of Front Royal*, Mr. Logie, who is a landlord in Front Royal, asks the Court to declare the Ordinance invalid. While the Plaintiffs in that case do not allege that any of the terms of the Ordinance have been actually applied to them, as a landlord, Mr. Logie owns property which is within the purview of the Town's Ordinance.

In *Cogil Corp. v. Town of Front Royal*, the Complainant Cogil is also a landlord in Front Royal, and it also asks the Court to declare the Ordinance invalid, and Counts 2 and 3 of the Cogil Complaint are premised on enforcement action initiated by the Town under the Ordinance as to specific rental property which Cogil owns.

The Town has filed a plea in bar in the Logie case, and demurrers in both the *Logie* case and to Count 1 of the Cogil Corp. case.

## II. *Conclusions of Law*

### 1. *Declaratory Judgment*

The Town has filed a Plea in Bar to Mr. Logie's Declaratory Judgment Act claiming that there is no justiciable controversy between the Plaintiffs and the Town, because the Plaintiffs do not allege that their property has been subjected to any enforcement action under the Ordinance. However, Mr. Logie is a landlord in the town, and the Ordinance applies to his rental property.

Virginia Code § 8.01-184, commonly known as the Declaratory Judgment Act, provides that:

> In cases of actual controversy circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, and other instruments of writing, [and] statutes . . . may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Virginia Code § 8.01-191 clearly expresses the legislative policy underlying the act:

This article is declared to be remedial. Its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor. It is to be liberally interpreted and administered with a view to making the courts more serviceable to the people.

These broad provisions have been in the Code of Virginia since at least 1950 (Va. Code of 1950 §§ 8-578 and 8-585).

The Declaratory Judgment Act "does not require one to wait until a right has been violated to seek judicial relief." *Portsmouth Restaurant Assn. v. Hotel & Restaurant Employee's Alliance*, 183 Va. 757, 763, 33 S.E.2d 218 (1945). The purpose of the act is to permit the declaration of the parties' rights before they mature. *Liberty Mutual Ins. Co. v. Bishop*, 211 Va. 414, 421, 177 S.E.2d 519 (1970).

"In its original conception, the declaratory judgment or decree was concerned with questions of status, or property rights connected therewith, and the construction of wills and other documents. At this time, however, as to subject matter, its field of operation is almost unlimited. . . ." 22A Am. Jur. 2d, *Declaratory Judgments*, § 61. Despite the Act's broad language and broad application, there are cases which are so problematic that even the very elastic provisions of the Declaratory Judgment Act cannot be made to fit. *See Hoffman Family, L.L.C. v. Mill Two Assocs. PHSP*, 259 Va. 685, 692-93, 529 S.E.2d 318 (2001).

The Plaintiffs rely primarily on *Board of Supervisors of Fairfax County v. Southland Corp.*, 224 Va 514, 296 S.E.2d 718 (1982), in support of their claim that this case may be decided by a declaratory judgment action. In the *Southland Corp.* case, the plaintiff had not applied for a special exception under the zoning ordinance provision it sought to have declared invalid; nonetheless, the Supreme Court sustained the trial court's jurisdiction to render a declaratory judgment. In support of its ruling, the Supreme Court noted that Southland was actually engaged in locating sites for 7-Eleven in the County, that Southland contended that it was injured by having to go through the *process*, and that the County "conceded that Southland was directly and immediately affected by the ordinance." While the town does not concede that Mr. Logie is directly and immediately affected by the application of the Town Ordinance, there is no functional distinction between Southland's being engaged in locating its stores and Mr. Logie's being engaged in the rental of his property.

As a general proposition "it is well settled that one who is not injured by the operation or effect of a municipal ordinance or is not within its purview

cannot raise questions as to its validity, such as its constitutionality or unreasonableness." 56 Am. Jur. 2d, *Municipal Corporations*, § 379. But persons who are directly affected by the statute or ordinance generally have standing to challenge its application to them. *See Goldman v. Landsidle*, 262 Va. 364 (2001). There is no question but that the Town Ordinance applies to Mr. Logie's rental of his property, so he has a direct interest in the application of the ordinance. Therefore, the Town's Plea in Bar in the Logie case will be denied.

## 2. *Constitutionality*

The Plaintiffs challenge the constitutionality of the Town's Ordinance claiming that it permits warrantless searches. In *Heublein v. Alcholic Beverage Control Dept.*, 237 Va. 192, 195-96, 376 S.E.2d 77 (1989), the Supreme Court observed:

> We have held that every statute "carries a strong presumption of validity" and unless it "clearly violates a provision of the United States or Virginia Constitutions, we will not invalidate it." *City Council v. Newsome*, 226 Va. 518, 523, 311 S.E.2d 761, 764 (1984). Moreover, "the Constitution is to be given a liberal construction so as to sustain the enactment in question, if practicable." *Waterman's Assoc. v. Seafood, Inc.*, 227 Va. 101, 110, 314 S.E.2d 159, 164 (1984).

In *Rainey v. City of Norfolk*, 14 Va. App. 968, 972-73, 421 S.E.2d 210 (1992), the Court of Appeals held that the General Assembly could lawfully require that "buildings . . . constructed . . . before the effective date of the . . . [building code] . . . be maintained in compliance with the Building Maintenance Code. . . ." stating:

> As previously noted, the rights attendant with the ownership of private property do not include the right to be absolutely free from government regulation. "The due process guarantee does not forbid reasonable regulation of the use of private property." *Alford v. City of Newport News*, 220 Va. 584, 585, 260 S.E.2d 241, 242 (1979). Pursuant to the state police power, the legislature may "restrict personal and property rights in the interest of public health, public safety, and for the promotion of the general welfare." *Id.* at 585-86, 260 S.E.2d at 242-43 (quoting *Gorieb v. Fox*, 145 Va. 554, 560, 134 S.E. 914, 916 (1926)). See also *Village of Bell Terre v. Borras*, 416

U.S. 1, 4 (1974) (characterizing the danger of the collapse of buildings as one of the historic problems, which the police power has been constitutionally invoked to redress). A legitimate exercise of the police power to regulate a property interest requires that "the means employed [must be] reasonably suited to the achievement of [the] goal." *Alford*, 220 Va. at 586, 260 S.E.2d at 243.

"It is an established principle that laws are not rendered unconstitutional by reason of their imposing burdens on persons or property, since the right to impose such burdens is an essential quality or incident of the police power. Hence, property owners may be required to assume all sorts of restraints and burdens to secure the general comfort and safeguard the public health." 16A Am. Jur. 2d, *Constitutional Law*, § 401.

The Plaintiffs argue that the Ordinance is unconstitutional because it permits warrantless searches, relying on *Camara v. Municipal Court*, 387 U.S. 523 (1967). However, the Front Royal ordinance is materially different from the ordinance in *Camara* which did permit warrantless searches.[1] The Front Royal ordinance does not provide for warrantless searches. The inspections authorized under the ordinance are conducted either by consent of the owner or of the tenant in possession or by other lawful means, which would include an administrative inspection warrant. Town Ordinance § 125-10(C). Such warrants would be based on the sworn testimony of the building official presented to a court of competent jurisdiction. *See* Virginia Code § 36-105 (inspection warrant based on sworn testimony when complaint received of Building Code violation that danger exists). An inspection under an administrative inspection warrant is a fairly commonly applied procedure for obtaining non-consensual access to private property for the purpose of inspecting its condition to determine its compliance with governmental regulations, and in Virginia such warrants must be based upon probable cause, so the landowner's constitutional rights are not transgressed by the Town Ordinance.

---

[1] The Ordinance in *Camara* provided: "Sec. 503: RIGHT TO ENTER BUILDING. Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code." (387 U.S. at 526.) In contrast, the Front Royal Ordinance, § 125-10(C), provides: "The consent of any owner, managing agent, or tenant shall be required before any inspection pursuant to this Article is performed, unless the inspection is conducted pursuant to other lawful means."

In *Mosher Steel v. Teig*, 229 Va. 95, 103, 327 S.E.2d 87, 91-92 (1985), the Supreme Court considered the constitutionality of administrative warrants to inspect property and stated:

> If an administrative inspection is not based on specific evidence of an existing violation, the Fourth Amendment requires a showing that reasonable legislative or administrative standards for inspection are satisfied with respect to the particular establishment to be inspected. *Barlow's*, 436 U.S. at 320; *Camara*, 387 U.S. at 538-39. The warrant application must provide the judicial officer with factual allegations sufficient to justify an independent determination that the inspection program is based on reasonable standards and that the standards are being applied to a particular employer in a neutral and nondiscriminatory manner. *See Matter of Northwest Airlines, Inc.*, 587 F.2d 12, 14-15 (7th Cir. 1978); *Donovan v. Enterprise Foundry, Inc.*, 581 F. Supp. 1433, 1440 (D. Me. 1984); *Gooden*, 39 N.C. App. at 525-28, 251 S.E.2d at 703-04.

In the present case, the Statewide Building Maintenance Code provides detailed standards for the maintenance of real property, and the purpose of the inspection is to determine whether the property complies with those standards of maintenance. Therefore, where the inspections are uniformly applied, are objective, neutral, and nondiscriminatory, they are permissible; consequently, the provisions for inspection in the Town Ordinance are not unconstitutional.

## 3. *Dillon's Rule*

In Virginia municipal governments have only those powers conferred upon them by the General Assembly, and the Plaintiffs argue that various provisions of the Town Ordinance exceed the plenary grant of authority conferred upon the town with respect to the enforcement of the Property Maintenance Code. "Under Dillon's Rule, [local governing bodies] have only those powers have only those powers which are expressly granted by the state legislature, *those powers fairly or necessarily implied from expressly granted powers*, and those powers which are essential and indispensable." *Arlington County v. White*, 259 Va. 708, 712, 528 S.E.2d 706 (2000). Where there is a plenary grant of authority, "the devil is in the details" as to how that power is to be actually implemented and applied. Once a power is conferred, expressly or impliedly, local governments have the discretion to determine the method of exercising the power.

Where the state legislature grants a local government the power to do something but does not specifically direct the method of implementing that power, the choice made by the local government as to how to implement the conferred power will be upheld as long as the method selected is reasonable. Any doubt in the reasonableness of the method selected is resolved in favor of the locality.

*Arlington County v. White,* 259 Va. 708, 712, 528 S.E.2d 706 (2000), *citing City of Virginia Beach v. Hay,* 258 Va. 217, 221, 518 S.E.2d 314, 316 (1999). "Whether a method chosen to implement an express or implied power is reasonable will depend upon the circumstances of each case. . . . [I]f the implementation expands the power beyond rational limits necessary to promote the public interest, it is unreasonable." *Hay v. City of Virginia Beach,* 258 Va. 217, 221, 518 S.E.2d 314 (1999).

With regard to the application of Dillon's Rule to the enforcement of the Property Maintenance Code on existing residential rental units, the General Assembly has authorized localities to enforce the Property Maintenance Code but has not specifically prescribed the method of enforcement. The enabling statute, § 36-105, provides a mixture of instances in which the locality is mandated to enforce the Code and those in which it has the discretion to enforce. For existing buildings, like the rental units at issue in this case, where there is no elevator, nor complaint by a tenant, nor the presence of a conservation or rehabilitation district, the section grants the locality the discretion to enforce the Property Maintenance Code without specifically setting out the method: "The local governing body *may* also inspect and enforce the Building Code for existing buildings and structures, whether occupied or not" (§ 36-105, third paragraph, first sentence.) The statute does not limit the circumstances in which this discretionary enforcement program may be implemented, nor does it specify the mechanical provisions by which it can be administered. In this case, the plan which the town has crafted to implement the enforcement of the Property Maintenance Code must be examined to determine whether the "implementation expands the power beyond rational limits necessary to promote the public interest."

The Plaintiffs rely upon a 1986 Attorney General's Opinion (86-87 Va. AG 221) to argue that an inspection program based on a change in occupancy cannot be used to enforce the Property Maintenance Code. While the Attorney's Opinion is instructive, it is not controlling. Moreover, the Danville ordinance addressed in the 1986 Opinion is significantly different from the Front Royal ordinance, in that the Danville ordinance required an inspection and an occupancy permit after *every* change in tenancy. To the extent the 1986

Opinion suggests that the Town cannot select the methods set forth in the Ordinance to implement its conferred power to enforce the Property Maintenance Code, it has been superseded by the later refinement of the Dillon Rule as expressed by the Supreme Court of Virginia in *Arlington County v. White, supra.*

The Town's Ordinance requires an inspection and the issuance of a certificate of compliance, at certain intervals, upon a change in occupancy (§§ 125-10(A) and 125-11(A)). Because most residential rental units in Front Royal are found in buildings constructed prior to Virginia's adoption of the Uniform Statewide Building Code, the Town reasonably proposes to inspect all such rental units, *once*, at the time of the *first* change in tenancy after January 2, 2002, to ensure that the premises are safe and habitable and that the delivery of electricity to such units will not constitute a fire hazard because of poor wiring or maintenance. The Town will then issue a certificate of compliance good for two years, in which the unit need not be inspected again. Section 125-10(B). No additional permits will be required regardless of the number of changes in tenancy during the two years. Another inspection will be made at the first change in tenancy after the expiration of the two-year certificate. If a unit is occupied by a long-term tenant, such change may not occur for many years.

This program of periodic inspections, triggered by changes in tenancy after the passages of two years and *not* after every tenancy, is an inspection program on a periodic basis. The Attorney General had no problem with property inspections under a periodic program. 86-87 Va. AG 221 at 223, Part V. A periodic inspection of buildings is not prohibited by Virginia law. Indeed, a 2002 amendment to § 36-105 clarifies that inspections of existing buildings in conservation and rehabilitation districts are specifically authorized at specific time intervals, not more frequently than once each calendar year. *See* 2002 Va. Acts of Assembly, Chapter 720. The method of periodic inspections based upon a change in tenancy adopted by the Town to implement the power specifically conferred upon it to enforce the Property Maintenance Code is reasonable and does not violate the Dillon Rule.

4. *Administrative Provisions of the Ordinance*

a. *Fines*

Relying on *Granny's Cottage, Inc. v. Town of Occoquan,* 3 Va. App. 577, 353 S.E.2d 10 (1987), the Plaintiffs contend that the penalty provisions of the Town Ordinance do not conform to the enabling provisions of the Code of

Virginia so they are invalid. However, that case is clearly not applicable, because the Occoquan Town Ordinance permitted penalties not provided for (each day constituting a separate offense), which resulted in fines exceeding the maximum permissible fine set forth in the enabling statute. In the Front Royal Ordinance, the penalty provisions are virtually identical to the provisions of § 36-106 of the Code of Va., except that the maximum penalty in the Ordinance, $1,000.00, is *less* than the maximum permitted by the Code, $2,500.00.

### b. *Code Official*

Section 128.1.2 of the Virginia Statewide Building Code specifically provides that "the building maintenance code official may inspect existing structures and equipment to enforce this part of this chapter. . . ." The Front Royal Town Manager, pursuant to the Town Ordinance § 125-2, has the power both individually and by his duly appointed agent, § 125-8, to enforce the Front Royal Building Maintenance Code.

### c. *Board of Appeals*

The Front Royal Ordinance provision for appeal to the Warren County *Building Board of Appeals* is specifically authorized by Virginia Code § 36-105: "Whenever a . . . municipality does not have such a building department or board of Building Code appeals, the local governing body shall enter into an agreement with the local governing body of another county . . . for such enforcement and appeals resulting therefrom."

### 5. *Termination of Electric Service*

The Plaintiffs also claim that the provisions in the Town Ordinance which permit the Town to terminate electric service to properties which are determined to be in non-compliance with the Property Maintenance Code are invalid because the enabling Ordinance does not expressly or inferentially authorize such a sanction.

The "termination of electric service" provision under § 125-10(D)(2)(c) comes up under a very specific set of facts. If, upon request for an inspection, the Code Official cannot inspect the property within two working days, the Code Official shall permit the occupancy of a dwelling unit by issuing a temporary permit for compliance, which will be valid for a period of up to 21 days. If the owner elects to place a tenant in the property during said 21 day period, which the Ordinance permits the owner to do, there is electric service

during the temporary permit for compliance. However, if the property was found not to be in compliance and, if at the end of the 21 day period, the property has not been brought into compliance, the property shall be vacated and the electric service terminated.

In *Bristol Redevel. & Housing Auth. v. Denton*, 198 Va. 171, 176-77, 93 S.E.2d 288 (1956), the Supreme Court affirmed the trial court's decision enjoining a municipal slum clearing project on the ground that the authority's determination that the area to be razed was a slum was arbitrary and capricious, and in doing so, the Supreme Court reviewed the principles governing such judicial review of a claim of arbitrary and capricious action by an authority:

> All presumptions are in favor of the validity of the exercise of municipal power. *National Linen Service Corp. v. City of Norfolk, supra*, 196 Va., at p. 279, 83 S.E.2d, at p. 403, and cases there cited; 62 C.J.S., *Municipal Corporations*, § 208-a, p. 389 ff.; 37 Am. Jur., *Municipal Corporations*, § 177, p. 810 ff. The burden is upon one alleging the invalidity of an ordinance to establish such invalidity by clear and convincing proof. 62 C.J.S., *Municipal Corporations*, § 208-c, p. 395; 37 Am. Jur., *Municipal Corporations*, § 179, pp. 814, 815.

While the Town has both the power to regulate the use of property to ensure the character and safety of the community and the power to both provide and to terminate electric service to customers within its service area, those powers are subject to the circumscribing effect of Dillon's Rule.

> "Under Dillon's Rule, [local governing bodies] have only those powers which are expressly granted by the state legislature, those powers fairly or necessarily implied from expressly granted powers, and those powers which are essential and indispensable. Where the state legislature grants a local government the power to do something but does not specifically direct the method of implementing that power, the choice made by the local government as to how to implement the conferred power will be upheld as long as the method selected is reasonable. Any doubt in the reasonableness of the method selected is resolved in favor of the locality." *City of Virginia Beach v. Hay*, 258 Va. 217, 221, 518 S.E.2d 314, 316 (1999) (citations omitted).

*Arlington County v. White*, 259 Va. 708, 712, 528 S.E.2d 706 (2000).

"[W]here a power is conferred and the mode of its execution is specified, no other method may be selected; any other means would be contrary to legislative intent and, therefore, unreasonable." *Commonwealth v. Arlington County Bd.*, 217 Va. 558, 577, 232 S.E.2d 30 (1977) (concurring opinion).

In this case, the General Assembly has specified how violations of the Property Maintenance Code may be enforced in the penalty provisions in the enabling legislation by prosecution as misdemeanors and the imposition of civil fines, Virginia Code § 36-106, and these provisions do not include the power to terminate utility service to the property. Unlike many towns, the Town of Front Royal has decided to supply power in the Town, and it is pursuant to that power set forth in Virginia Code § 15.2-2109 and not any delegation of power from the General Assembly in the specific enabling statute that the Town relies upon as its authority to terminate electric service for non-compliance with the Property Maintenance Code. When the Town provides electricity to its citizens, it is providing a public utility service, and absent an enabling statute passed by the General Assembly expressly authorizing it to terminate electric service for non-public utility reasons, it may not do so. Otherwise, the town could use the termination of utility service, such as electricity and water, to enforce compliance with a broad range of Town ordinances, such as the collection of delinquent taxes, sign ordinances, etc. The power to provide and to terminate electricity derives from a grant from the General Assembly to enable the Town to provide utility services in the town, and the power to terminate electric service to enforce the Property Maintenance Code is not a power directly or inferentially conferred upon the town by the General Assembly. Therefore, the Town may not terminate electric service as a means of enforcing its Property Maintenance Ordinance, but instead must rely solely upon the misdemeanor and fine provisions in the Ordinance.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The Town's Plea in Bar in the Logie case is denied;

2. The Town's Demurrer in the Logie case is sustained;

3. The Town's Demurrer to Count I of the Cogil Corp. case is sustained, and Count I is dismissed; Counts II and III in the Cogil Corp. case are now moot;

4. The Town Ordinance, §§ 125-1 and 125-15 of the Front Royal Municipal Code, is valid, *except for the provision for the termination of electric service*, and is not unconstitutional, because in the absence of consent

of the owner or tenant pursuant to § 125-10(C), the Town must obtain an administrative inspection warrant issued by a court in order to gain access to the particular property to conduct a building maintenance inspection;

5. The Town Ordinance provision that "the electric service shall be terminated" violates Dillon's Rule and may not be enforced. The Town may not terminate electric service in order to enforce its Property Maintenance Ordinance;

6. There is nothing further to be done in these cases, and they are dismissed.

The Clerk is directed to send a copy of this order to counsel of record, who shall file such objections hereto as deemed advisable within ten days of their receipt of a copy of this order. Endorsement of counsel is dispensed with pursuant to Supreme Court Rule 1:13. This is a final order, and the Clerk is directed to place these cases among the ended causes.